B. F. HOWARD *et al. v.* CHARLES W. FERGUSON, *Judge*

(No. 8181)

Submitted May 8, 1935. Decided June 4, 1935.

HATCHER and KENNA, JUDGES, dissenting.

*J. N. Harman, Jr., Lively, Lively & Stambaugh* and *Wells Goodykoontz*, for petitioners.

*J. W. Copley, G. R. C. Wiles* and *Price, Smith & Spilman*, for respondent.

MAXWELL, JUDGE:

This is a proceeding in prohibition relating to the circuit court of Mingo County. The controversy centers in a legislative enactment of the 1935 session.

By the terms of the Act, Senate Bill No. 21, passed February 4, 1935 (Chapter 41), the County of Mingo is withdrawn from the Eighth Judicial Circuit composed of the Counties of McDowell and Mingo, and transferred to the Twenty-fourth Circuit, theretofore embracing only the County of Wayne. The transfer is attempted to be made effective "on and after the first day of March, one thousand nine hundred thirty-five, or as soon thereafter as this act shall take effect."

The petitioners are B. F. Howard, Judge of the Eighth Judicial Circuit, a resident, taxpayer and legal voter of McDowell County, and J. Brooks Lawson, Fred Kopp, J. E. Wilkinson and J. M. Jordan, residents, taxpayers and legal voters of the County of Mingo. They pray that the respondent, Charles W. Ferguson, Judge of the Twenty-fourth Judicial Circuit, be prohibited "from further assuming jurisdiction as Judge of the Circuit Court of Mingo County, and from further entering any orders or decrees as such, or assuming any powers or performing any functions as such Judge," it being alleged in the petition that since March 1, 1935, the respondent has assumed to discharge the duties of Judge of the Circuit Court of Mingo County.

On the matter of procedure, the respondent urges that the actual purpose of the proceeding is to try title to a public office. He asserts that the proper course would be by mandamus or *quo warranto;* that prohibition is inappropriate and cannot be here invoked by the petitioners.

The procedural proposition thus urged by respondent would necessarily prevail if we were of opinion that the basic purpose of the controversy is to try title to a public office. Such, we conceive, however, is not the real object of the proceeding, although the right to the office of Judge of the Circuit Court of Mingo County is necessarily involved. This is not a personal controversy between Judge Howard and Judge Ferguson. It is a broader matter, constituting basically an effort on the part of citizens of Mingo County to prohibit from presiding in the Circuit Court of that County a man who, they aver, is precluded by the Constitution from assuming said duties under his present warrant of authority. The term for which Judge Howard was elected Judge of the Circuit Court of McDowell and Mingo Counties will not expire until December 31, 1936.

Prohibition is ''an extraordinary judicial writ, issuing out of a court of superior jurisdiction and directed to an inferior court, for the purpose of preventing the inferior tribunal from usurping a jurisdiction with which it is not legally vested.'' High's Extraordinary Legal Remedies (3d Ed.), sec. 762. Consult: 50 Corpus Juris, p. 654; 22 Ruling Case Law, p. 2; *Fleming* v. *Commissioners,* 31 W. Va. 608, 8 S. E. 267; *Johnston* v. *Hunter,* 50 W. Va. 52, 40 S. E. 448. The Supreme Court of Appeals of this State is vested with original jurisdiction in prohibition. Constitution, Article VIII, section 3. A statute provides: ''The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers.'' Code 1931, 53-1-1.

Ordinarily, prohibition is invoked by a party or parties interested in a specific matter as to which they are advised that the tribunal concerned is acting in excess or abuse of jurisdiction. But it is not necessary that the petitioner or

petitioners for prohibition be directly concerned in the subject matter of the controversy, ''as every citizen is interested in restraining courts within their appropriate jurisdictions.'' *Midland Inv. Corporation* v. *Ballard,* 101 W. Va. 591, 595, 133 S. E. 316. In *State* v. *County Court,* 97 W. Va. 615, 125 S. E. 576, there is cited eminent authority in support of the proposition that ''the strict and highly technical rules with respect to parties which apply to most other extraordinary remedies, do not apply to a proceeding in prohibition, owing to the fact that it is regarded more than others as a matter of public interest, in which the state is largely interested.'' Consider: *St. Marys* v. *Woods, Judge,* 67 W. Va. 110, 67 S. E. 176, 21 Ann. Cas. 164; 50 Corpus Juris, p. 694.

The petitioners take the position that unless the respondent is prevented from further attempting to discharge the duties of Judge of the Circuit Court of Mingo County, there will be drawn in question the validity of orders and decrees that he may assume to enter in such capacity, and great uncertainty will thereby be injected into matters litigated in that court, both of public and of private character. This uncertainty they seek to avoid by prohibition.

There is no governmental instrumentality more vital to the ordinary administration of public affairs of a county than the Circuit Court. If the official right of him who undertakes to discharge the duties of the office of Judge of such court is open to challenge on constitutional grounds, the orderly administration of justice is thereby seriously endangered. This is of such fundamental moment in the preservation of order and in the protection of personal rights that it would seem highly expedient for representative citizens to bring the matter promptly to a head, and to seek by prohibition to prevent a great involvement of litigable matters from being precipitated in the county. In *St. Marys* v. *Woods, Judge, supra,* it was held that residents and taxpayers of a city ''have such interest as will enable them to maintain a writ of prohibition against a circuit court which is proceeding to amend the charter of such city without jurisdiction to do so in the particular case.'' With all the more reason, it may be asserted that citizens and taxpayers of a county have such interest in

the public weal as authorizes them to proceed by prohibition to prevent usurpation of authority in the entire judicial program of the county. We conclude that prohibition is appropriate in the matter at bar.

On the merits, the essential query is whether, under the State Constitution, a transfer of a county from one judicial circuit to another, may be made effective at any time other than at the expiration of the regular terms of duly elected circuit judges.

Section 14, Article VIII, reads: "The Legislature may rearrange the circuits herein provided for at any session thereof, next preceding any general election of the judges of said circuits, and after the year one thousand eight hundred and eighty-eight, may, at any such session, increase or diminish the number thereof." The Act in question is in compliance with said constitutional provision in this, that it was enacted at a legislative session next preceding a general election of circuit judges. But does that provision authorize the legislature to make a change in judicial circuits effective at any time prior to the expiration of the terms for which the judges were elected? In our opinion, the necessary meaning of the provision is that such may not be done.

The section provides for (1) rearranging judicial circuits, and for (2) increasing or (3) diminishing the number thereof. These three possibilities of legislative action with reference to judicial circuits are by said section dealt with on the same plane. Circuit judges are constitutional officers. When they have been duly elected and qualified, they cannot be legislated out of office, directly or indirectly. In our judgment, it would be just as reasonable to undertake to diminish the number of circuits within the period of the elective terms of the judges thereof as it is to undertake to change the territory of a circuit within such period. If one county may be transferred from a judicial circuit within the term of the duly elected judge thereof, what is to prevent the remaining county or counties of the circuit from being transferred likewise? It would seem to be as justifiable so to transfer the remaining counties of a circuit as to transfer the one first affected. But this would be tantamount to removal from office. It cannot

be done that way. A judge cannot be removed from office except upon conviction on charges of impeachment for cause. West Virginia Constitution, Article VIII, section 17.

Interference with judicial authority, such as is here involved, is altogether out of harmony with the spirit and purpose of our fundamental law. The applicable provisions of our Constitution are not solely for the protection of the individual who happens to be a judge. Such is their incidental or secondary purpose. Primarily they are for the protection of the judiciary as one of the three coordinate branches of state and federal government. The necessity for explicit constitutional guaranty by the people of the independence of the judiciary is to be found in the history of nations where courts have not escaped the hand of tyranny. Many of the postulates of our organic law were framed to guard against the exercise of arbitrary power. They are assurances of liberty.

An independent judiciary was one of the principal objectives of the founders of both our state and national governments, and such a judiciary stands today an operating actuality cherished by those who believe in the perpetuation of the American concept of government. It has been generally realized that constitutional liberty can be best safeguarded if judges are not subjected to legislative interference while in the discharge of their duties. Seldom is it attempted.

We must look not alone to section 14 of Article VIII of the Constitution for the meaning of the phraseology there employed. Constitutional provisions *in pari materia* must, of course, be read together. The ultimate meaning is thus derived. Section 10, Article VIII of the Constitution is pertinent. It provides: ''For the circuit hereinafter called the first, two judges shall be elected, and for each of the other circuits one judge shall be elected by the voters thereof.'' The term is eight years. Thus, by the Constitution, framed and promulgated by the people themselves, there is vested in the circuits the right to elect their judges for eight-year terms. In no other manner may men be clothed with authority as circuit judges, except that a vacancy may be filled by gubernatorial appointment until the next general election.

The immediate transfer of Mingo from the Eighth to the Twenty-fourth circuit would result in placing in the circuit judgeship of that county a man for whom the people thereof had not voted, and would deprive them of the services of the judge whom they duly elected for a definite term. This would involve, in the first instance, a legislative destruction of a constitutional right of the people of Mingo County, and, in the second instance, it would involve the appointment by the Legislature of a judge to serve in Mingo County in lieu of the constitutionally elected judge of that county.

Rearrangements under section 14 must not transgress the provisions of section 10. Circuits must be served by the duly elected judges thereof for the period of their terms of office. There is thus buttressed the construction which we have above placed on section 14 alone.

There have been, in a few instances, similar rearrangements of circuits, effective at dates not at the end of terms. The constitutionality of those Acts was not challenged. Such precedents are inefficacious to change organic law, and have no bearing here.

The authority of a state legislature is of the essence of sovereignty; it would be absolute but for constitutional limitations. It must stop short when in conflict with a power vested by the states in the Federal government and set forth in the Federal Constitution. Likewise, when in conflict with a restriction of the State Constitution, legislative authority reaches an impasse—a wall of adamant. When thus confronted, legislative action is fruitless. The representatives of the people may not do through legislation that which the people themselves have said in their Constitution may not be done. If there be conflict between constitutional inhibition and legislative enactment, the courts must adhere to the former and disregard the latter. Both cannot be law. The Constitution must stand; such enactment cannot.

It follows that the provision of Senate Bill No. 21 making the transfer of Mingo County from the Eighth circuit to the Twenty-fourth effective March 1, 1935, is unconstitutional, null and void.

By a two-thirds vote of both Houses the Act was put in

effect from passage. It is only the provision in respect of the date the transfer should become effective that is vain. The Act as a whole stands, but its full operation is postponed by the constitutional provisions discussed. Under the Act, judges must be elected at the general election of 1936 for the Eighth and Twenty-fourth circuits as newly arranged. Until January 1, 1937, the circuits must continue as though the Act had not been passed.

We are therefore of opinion to award a writ of prohibition as prayed.

*Writ awarded.*

KENNA, JUDGE, dissenting:

We have before us in this proceeding two claimants to the office of judge of the circuit court of Mingo County. Judge B. F. Howard claims that office by virtue of having been elected thereto in the general election held in November, 1930, at which he was selected judge of the Eighth Judicial Circuit, comprising the counties of McDowell and Mingo, for an unexpired term ending the 31st day of December, 1936. Judge Charles W. Ferguson claims that office under an act of the legislature passed February 4, 1935, transferring the county of Mingo from the Eighth Judicial Circuit to the Twenty-fourth Judicial Circuit, of which he is the judge, effective the 1st day of March, 1935, ''or as soon thereafter as this act shall take effect.'' If the act of the legislature is to be fully sustained as constitutional, then under its plain terms, Judge Ferguson became judge of the circuit court of Mingo County on the 1st day of March, 1935. If the act, or that part thereof making it effective on the 1st day of March, 1935, is to be overthrown as unconstitutional, then Judge Howard remains the judge of the circuit court of Mingo County until the expiration, on December 31, 1936, of the term for which he was elected. There is no other question to be decided in the case, and it is perfectly apparent to my mind that its sole object is to procure a decision that will settle the conflicting claims to the office of judge of the circuit court of Mingo County.

Prohibition is not a proper proceeding to settle conflicting

claims to a public office, or, in other words, to try the title·to a public office. *Moore* v. *Holt,* 55 W. Va. 507, 47 S. E. 251. This rule is so universally recognized and is so deeply imbedded in West Virginia precedent that it can be neither denied nor questioned, and extended citations are not needed to guide the inquirer to the many cases sustaining it. In my opinion, the theories advanced in the majority opinion effectively abrogate the time-honored and extremely practical distinction between the appropriate remedies of mandamus and quo warranto, and the entirely inappropriate remedy of prohibition, for settling the right, as between conflicting claims, to occupy a public office.

The majority opinion seeks to distinguish this case from a case the purpose of which is to try the right to occupy a public office, and thus to place this case outside the established rule, which the majority opinion recognizes, in the following manner: ''Such, we conceive, however, is not the real object of the proceeding, although the right to the office of judge of the circuit court of Mingo County is necessarily involved. This is not a personal controversy between Judge Howard and Judge Ferguson. It is a broader matter, constituting basically an effort on the part of citizens of Mingo County to prohibit from presiding in the circuit court of that county a man who, they aver, is precluded by the constitution from assuming said duties under his present warrant of authority.'' It is perfectly true that, joined with Judge Howard as parties petitioner are J. Brooks Lawson, Fred Kopp and J. E. Wilkinson in their own right and as commissioners in chancery of the circuit court of Mingo County, and J. M. Jordan in his own right and as divorce commissioner of the circuit court of Mingo County. This circumstance, naturally, brings into the case interests other than the personal interest of Judge Howard in the office in controversy, but it does not remove the outstanding fact that the contest for the office itself is the meat and kernel of the case. I think the majority opinion confuses the question of parties with the question of jurisdiction of the subject matter. The subject matter of this proceeding would remain the same if all of the citizens of Mingo

County were to become parties petitioner, as it would if they all became plaintiffs in an action of debt for the recovery of land. The subject matter does not change by the addition of parties who may have interests in that subject matter differing from that of the main petitioner. Of course, the citizens of Mingo County have an "inherent interest" in the office of circuit judge of that county, but it is perfectly apparent that they have the same interest in every other public office, from the highest to the lowest, in that county. If this "inherent interest" is all that needs to be set up in a prohibition proceeding in order to permit title to a public office to be tried by that means, then, of course, the time-honored distinction between prohibition on the one hand and mandamus and quo warranto on the other, may be defeated by the most superficial of expedients by simply joining in the proceeding a citizen or two possessed of this "inherent interest." There is no authority for permitting to be done by such obvious indirection the thing that may not be directly done.

If we can take jurisdiction in a prohibition proceeding to decide the right to occupy the office of judge of the circuit court of Mingo County when that right turns upon the validity or invalidity of an act of the legislature, why may we not do so in a case where that right would depend upon the validity or invalidity of an election? Why not where the right turns upon the validity or invalidity of votes cast in an election? Surely, the jurisdiction of the subject matter cannot depend upon the nature of the legal question involved in the particular controversy. If not, then I respectfully submit that the theory asserted in the majority opinion will make it possible to decide all matters affecting elections which relate to the title to the public office involved, in a prohibition proceeding by simply adding as parties petitioner certain citizens having an "inherent interest" in the office in controversy. This principle confers upon the courts the power to prevent persons duly elected to public office from entering upon the duties of those offices until after the courts have given leave. The right to prohibit a person from entering upon a public office before a full hearing is something to be distinguished from the right to remove from a public office after hearing.

See the discussion in *Moore* v. *Holt*, 55 W. Va. 507, 47 S. E. 251, which makes this case a nationally recognized authority.

It seems to me that this matter of the "inherent interest" of citizens in their public offices, as it affects the question of jurisdiction to try title to a public office in a prohibition proceeding, although not alluded to in the opinion, was much more strongly before the court in the case last mentioned than it is in this. An examination of the record upon which this court decided the case of *Moore* v. *Holt*, 55 W. Va. 507, 47 S. E. 251, discloses that sixteen citizens of the Town of Montrose in Randolph County brought a proceeding in prohibition in the circuit court of that county alleging that by virtue of a void city election, one J. H. Moore was usurping the office of mayor, one C. B. Hyer the office of recorder, and O. B. Hyer, H. Moore and N. A. Moore offices of councilmen of that town. It was averred that the five persons alleged to be usurping the offices named were five of the seven members of the town council. The averments of the petition show that the sixteen petitioners comprised a clear majority of the 28 legal voters of the town, and were thus entitled to control, in a proper case, its municipal organization. The interest of the petitioners in the municipal organization of the town as citizens was set up. The petition thus made plain that not only one public office, but five public offices were at stake, and furthermore, that the right to occupy these offices would determine the entire government of the town. It would be difficult to imagine a more vital "inherent interest" in public offices on the part of citizens of a governmental sub-division than is displayed by this petition. On the strength of it, the judge of the circuit court of Randolph County issued a rule in prohibition. Then a prohibition proceeding was brought in this court, the purpose of which was to prevent the judge of the circuit court of Randolph County from proceeding further in the prohibition case before him because its purpose was to try the right to occupy public offices. The proceeding in the circuit court had been decided on demurrer overruled, so that the allegations of the petition filed in the circuit court, for the purpose of the proceeding here, were admitted. This Court issued a writ of prohibition, the opinion by Judge

Poffenbarger quoting the language of Judge Dent in *Board of Education* v. *Holt et al.,* 54 W. Va. 167, 46 S. E. 134 (which see for a discussion of the principle that prohibition cannot be used as a means of preventing a person from entering upon a public office), as follows: ''Such use of prohibition is plain usurpation of and abuse of judicial function.'' In stating the reasons for the award of the writ, the court gave the first as follows: ''The subject matter has not been brought within its cognizance by any process which the law has appointed for the purpose.'' Later in the opinion, the court further stated: ''Hence, the court, by using it (referring to the writ of prohibition used as a means of trying title to a public office), obtained no jurisdiction of controversies of the kind presented, because the inevitable effect of its use is to do that which the court has no power to do.''

I cannot further prolong these comments. It seems to me that the overwhelming weight of both reason and authority is contrary to the views expressed in the majority opinion on the question of jurisdiction. To discuss the merits of a controversy that I do not regard as being so much as before this Court, I think would be but begging a question that should prevent the merits from being considered in this proceeding. It is to be borne in mind, of course, that the views I express are not intended to minimize the importance of the right of these petitioners. However, there are other remedies, full, prompt, complete and designed for the very purpose of giving redress to the exact grievances complained of here. I submit, with all deference, that permitting petitioners to assert rights of the nature set up in their petition here, in a proceeding in prohibition, is to give to the courts a power they were never intended to exercise, and does vital injury to our system of jurisprudence. I would dismiss the petition for lack of jurisdiction.

Judge Hatcher authorizes me to say that he concurs in my observations on the procedure in this case.