STATE *ex rel.* THE WEST VIRGINIA

BOARD OF AERONAUTICS, *etc., et al.*

*v.*

EDGAR B. SIMS, *Auditor of State of West Virginia*

(No. 9903)

Submitted January 8, 1947. Decided February 11, 1947.

*Dale G. Casto, J. Philip Clifford* and *H. William Largent,* for relators.

*Thomas W. Moses* and *Charles M. Love, Jr.,* for respondent.

FOX, PRESIDENT:

The Legislature, at its 1945 Session, appropriated the sum of $37,500.00 for each of the fiscal years beginning July 1, 1945, and July 1, 1946, "for operation of the Board of Aeronautics and for State aid to county and municipal airports". The appropriation for each of said years was $9,000.00 for personal services; $3,500.00 for current expenses; $5,000.00 for equipment; and $20,-000.00 for airport development. On July 11, 1946, the Board of Aeronautics, by H. H. Stark, Director and Approving Officer, made a requisition on the State Auditor for the sum of $11,500.00, apportioned, in varying amounts, among designated counties and municipalities throughout the State, which requisition contains this statement: "Funds so allocated will be used in the furtherance and maintenance of high standards of safety and operation for the protection of the public, airmen and aircraft". The respondent, the State Auditor, refused to honor such requisitions, and to issue State warrants therefor, giving as his reason that "to distribute this money as proposed would be in direct violation of that constitutional provision which prohibits the extension of credit of the State to any county, municipality, etc. I recall that a similar requisition was rejected a year or more ago and I shall refuse to distribute State money according to any similar requisition". The basis of the Auditor's refusal to honor such requisition is Section 6 of Article X of the Constitution, which reads:

"The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; nor shall the State ever assume, or become responsible for the debts or liabilities of any county, city, township, corporation or person; nor shall the State ever hereafter become a joint owner, or stockholder in any company or association in this State or elsewhere, formed for any purpose whatever."

Thereupon the relators filed their petition in this Court against the Auditor, seeking, by writ of mandamus, to compel him to honor the requisition aforesaid. We awarded a rule against the Auditor, returnable on the first day of the present term, requiring him to show cause why the prayer of the relators' petition should not be granted. The respondent tendered, and there has been filed, his demurrer to the petition of the relators, relying on Section 6, Article X of the Constitution of this State, and the due process clauses of the State and Federal Constitutions.

As a background for the decision of the questions raised by the petition and demurrer aforesaid, it may be stated that the attention of the Legislature was first directed to the regulation of aviation in 1929, and Chapter 61, Acts of the Legislature, 1929, authorized counties, cities, towns and villages to establish airports and landing fields; authorized one or more counties, cities, towns and villages to join with other such bodies to establish joint airports and landing fields; and further authorized the laying of levies for the purpose of establishing, leasing, maintaining, constructing and operating airports and landing fields, and provided for the general supervision and control of aviation in this State. This statute was amended by Chapter 3, Acts of the Legislature, 1941, to authorize any municipal corporation to establish, lease, construct, maintain and operate an airport or landing field within ten miles of the corporate limits of such municipality, where such corporate limits were not more than ten miles distant from the boundaries of this State, and provided that the property acquired for such pur-

poses should be exempt from taxation in the manner provided by Section 9, Article 3, Chapter 11 of the Code. It was further amended, in respects not important in this litigation, by Chapter 6, Acts of the Legislature, 1945.

By Chapter 4, Acts of the Legislature, 1931, a Board of Aeronautics was established, with general authority in such board to supervise and control commercial and public airports, landing fields, and schools of aviation; to provide for the enforcement of the rules and regulations adopted by the board governing the regulation of airports, aircraft and aviation within the State; to provide for the licensing of airports and schools of aviation; and to provide funds to carry out the provisions of the act.

This act was amended by Chapter 72, Acts of the Legislature, 1935, as to Sections 1 and 5, and by Chapter 14, Acts of the Legislature, 1943, by adding thereto Section 2A, and which now appears as Section 2A, Article 2A, Chapter 29, Michie's Code, 1943, and reads as follows:

"Such board, out of any appropriations made to it by the Legislature or out of any funds at its disposal, may make funds available by grant or otherwise to counties and municipalities for the construction, improvement or maintenance of airports or landing fields owned or operated by such counties or municipalities, and the removal or correction of hazards dangerous to flying to meet the requirements of the several agencies of the United States government in aid of the prosecution of World War II. Acceptance of any moneys so made available to any county or municipality shall constitute the consent by the recipient that such airport or landing field may be used by the United States government, the state or any of their respective agencies, including the state board of aeronautics and the national guard of West Virginia for state purposes related or incidental to aeronautics."

It is this section that is challenged in this proceeding as unconstitutional. It is contended by the respondent

that the effect of such section is to authorize the Board of Aeronautics to extend the credit of the State to the various counties and municipalities of the State which have established airports, and, in effect, amounts to an assumption by the State of the debts or liabilities of such counties or municipalities in violation of Section 6 of Article X of our Constitution, quoted above; that it comes within the inhibition of Section 10, Article III of the Constitution of this State, which provides that "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."; and the provision of Section 1, Article 14 of the Federal Constitution, which, among other things, provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." It is contended that the effect of the enactment under attack is to require the State of West Virginia, and its citizens, to pay the debt of the counties and municipalities, in the creation of which, the citizens outside of such counties and municipalities had no part.

It will be apparent that the decisive question in this case is whether the appropriation under discussion amounts to the assumption or payment of a debt or liability of the counties and municipalities to which any part of such appropriation was allocated by the Board of Aeronautics. Under plain provisions of our State Constitution, the Legislature does not have power to assume the debts or liabilities of a county or municipality. This was clearly established in the case of *Berry* v. *Fox*, 114 W. Va. 513, 172 S. E. 896. That case dealt with an Act of the Legislature authorizing the payment, out of State funds, of interest and sinking fund requirements on outstanding bonds issued by counties, road districts and school districts, in connection with the maintenance of the public schools and highways of the State. No

question was raised as to there being in existence debts contracted by the taxing bodies mentioned above, for purely local purposes. The argument on which it was sought to sustain the legislative enactment was that inasmuch as the State had, by then recent legislation, assumed primary responsibility for the schools and highways of the State, the State would, under the Constitution, be warranted in assuming the burdens attached thereto in the way of bonded indebtedness. This Court refused to accept the legislative view, and held that the statute then under consideration was unconstitutional, under Section 6 of Article X of the State Constitution; and also on the ground that it violated the due process clauses of the State and Federal Constitutions, in that it required payment of existing indebtedness by persons who had no part in creating the same. We adhere to our ruling in that case, but, in our opinion, it is not applicable to the situation presented in the case at bar.

We assume that it will not be questioned that the control of aviation is the prerogative of the State, under the police power, and that the Legislature may enact laws providing for its regulation and appropriate public funds therefor. It is conceded by the respondent that the money appropriated by the Legislature for aviation may be considered as being for a public purpose. But, as we understand the contention of the respondent, it is that the fact that a county court or the governing body of a county, or a municipality, has established and is operating, or proposes to operate, an airport, requires a holding that any State aid connected therewith should be construed as assuming a debt or liability of the county or municipality involved; and that it is in the same status as if the State were assuming an existing indebtedness of the county or municipality created in connection with such airport. We cannot follow this line of reasoning. Admittedly, the Legislature cannot pay the debts of a county or municipality incurred in connection with an airport or other public improvement; but we see no reason why it may not, in promotion of the public interest

throughout the State, extend aid to such counties and municipalities, without being held to have paid their debts or assumed their liabilities.

The maintenance of airports throughout the State is a program in which the entire State is interested, and it is difficult to localize an airport. People ordinarily do not use the facilities of aviation for local purposes. In the allocation of funds proposed, there is included aid to the airport at the State Capitol; to another at the site of the State University; another at the State's largest city; and to others in some of the leading cities of the State, such as Wheeling, Fairmont, Clarksburg, Martinsburg, Beckley and Parkersburg; and there is a proposed allocation of funds to the County Court of Roane County. Obviously, the purpose was to make a fair distribution of the sum appropriated by the Legislature, to airports in all sections of the State, and the state-wide purpose is manifest. Then, it may be asked, how can the Legislature, at any reasonable cost, aid in the promotion of aviation in the State unless it is permitted to contribute to the efficiency of existing airports. The establishment and maintenance of an airport is expensive, and duplication of airport and landing field service would be wholly unwarranted from any standpoint. No Legislature would ever contemplate entering upon a program of establishing and maintaining airports throughout the State, as a State proposition. It is, we think, fully warranted, in the promotion of a legitimate public purpose, namely, the advancement of aviation, in granting aid to established facilities of a county or municipality, and thereby securing the right to use the same for State purposes as the challenged statute provides. We think the case of *Kenny* v. *County Court of Webster County*, 124 W. Va. 519, 21 S. E. 2d 385, is authority for this proposition. In that case we held that a statute requiring contribution by the county court to a general relief fund was constitutional, and was not affected by the assumption by the State of a large portion of the burden of providing relief for indigent persons throughout the State. In discussing the question we said:

"It is contended that the furnishing of state aid to the counties, in connection with general relief, violates Section 6 of Article X of the Constitution, which provides that 'The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person; * * *'. This cannot be true, if the problem of relief is primarily the responsibility of the state. The mere fact that in carrying out this responsibility, the state, through its Legislature, requires contribution thereto by the counties, does not prohibit the state from exercising its own prerogative and from using the county courts as agencies in carrying out its own purposes, and the amount it contributes to the county general relief, by way of state aid, is not lending the credit of the state to the county. The case of *Berry* v. *Fox*, 114 W. Va. 513, 172 S. E. 896, is strongly relied upon by the respondent, as prohibiting state aid to counties under the General Welfare Law. We do not think that case applies to the present situation. In that case, what the state was trying to do was to provide for the payment of the bonded indebtedness of road and school districts, which had been created by a vote of the people, and which was, therefore, clearly the responsibility of the several fiscal divisions which created the debts. Here we say that relief being primarily the responsibility of the state, Section 6 of Article X of the Constitution was not intended to inhibit the state from contributing, through county agencies, to the carrying out of its responsibility in that connection."

We think this holding may be applied to the case at bar.

Upon whom rests the primary burden of regulating and providing for aviation is a question which must be decided under general principles, for at the date of the adoption of our Constitution there was no such thing as air travel. In our opinion, when it developed, it automatically came under the police power of the State, and the Legislature being vested with the exercise of that power, with the right to delegate it to counties and municipalities. While county courts, under the Constitution, are vested with the power to supervise the police and the fiscal affairs of their counties, under such regulations as might be prescribed by law, we think this is

local in its application. In practice, the State has assumed the primary power to control and regulate aviation, and has delegated to county courts and municipalities certain powers with respect to the establishment and operation of airports and landing fields. As stated above, it being impracticable to have more than one airport in a particular community, by reason of the cost of construction and expense of operation, and it being a public purpose in which the entire State is interested, the authority in respect to the same being, under existing legislation, committed both to the State and its subdivisions, we see no reason why the State may not aid an airport established by a county or municipality; nor any constitutional objection to a legislature conferring upon counties and municipalities the right to render aid in respect to an airport established by the State, if, for any reason, the State should see fit to construct and operate an airport.

As we view the matter, the proposed allocation of funds has none of the elements of the payment or assumption of a debt or liability of a county or municipality. In our opinion, the Legislature was fully within its constitutional powers when it appropriated money for airport development. As a practical matter, that can only mean aid in necessary construction, or aid in operation of existing aviation facilities. The only difference between aid to the schools, and aid to airports, by the State, is that as to schools their maintenance is made the primary obligation of the State under the Constitution; while as to airports, there being no constitutional restriction, their control and regulation is within the police power of the State, the exercise of which is a legislative function and an activity which the State may treat as of public importance to the entire State, thereby justifying the appropriation of public funds, either to establish and operate airports by the State; or adopting the more sensible, and more efficient plan, of aiding in the expansion and use of facilities already established by the county courts and municipalities throughout the State.

The constitutional power of the Legislature to enact the challenged Section 2A of Article 2A of Chapter 14, Acts of the Legislature, 1943, being clear, the duty of the respondent to honor the requisition involved and issue warrants therefor is likewise clear, and mandamus will lie to compel the performance of a clear legal duty. "A peremptory writ of mandamus will issue to require the discharge by a public official of a non-discretionary duty." *Glover* v. *Sims*, 121 W. Va. 407, 3 S. E. 2d 612.

We are, therefore, of the opinion to award the writ prayed for, and an order will be entered accordingly.

*Writ awarded.*