STATE *ex rel.* BOARD OF GOVERNORS OF WEST VIRGINIA UNIVERSITY

*v.*

EDGAR B. SIMS, *Auditor*

(No. 10669)

Submitted May 4, 1954. Decided June 8, 1954.

*John G. Fox,* Attorney General, *Cletus B. Hanley,* Assistant Attorney General, for relator.

*Peters, Snyder, Merricks* and *Leslie, Chas. G. Peters, H. L. Snyder, Jr.,* for respondent.

HAYMOND, JUDGE:

The petitioner, Board of Governors of West Virginia University, a corporation, in this original proceeding in mandamus, seeks a writ to compel the defendant, Honorable Edgar B. Sims, Auditor of West Virginia, to honor a requisition submitted to the defendant by Dr. Irvin Stewart, President of West Virginia University and Executive Officer of the Board of Governors. The requisition has

been approved by the Board of Governors, is in the sum of $350.00, is drawn on Account No. 3001, Current Expenses, and is in favor of the North Central Association of Colleges and Secondary Schools, herein sometimes referred to as the North Central Association, for the purpose of paying the 1953-54 dues of the University as a member of that association. Following the refusal of the defendant to honor the requisition this proceeding was instituted in this Court.

Upon the petition, filed March 16, 1954, a rule was awarded, returnable April 13, 1954. On March 25, 1954, the defendant filed an answer to the petition and on March 31, 1954, the petitioner filed a replication to the answer. On April 13, 1954, by agreement of the parties and by leave of this Court hearing upon the petition was continued until May 4, 1954, to enable the parties to obtain testimony of witnesses by depositions which were filed on May 3, 1954. The proceeding was submitted for decision on May 4, 1954, upon the petition; the answer; the replication; the depositions and the exhibits filed with the depositions by the respective parties; and the briefs and the arguments of the attorneys in behalf of each party.

The defendant seeks to justify his refusal to honor the requisition submitted to him and to issue a warrant for the payment of the current annual membership dues of West Virginia University to the North Central Association on these grounds: (1) Neither the educational work nor the professional standing of the University will be promoted by continued membership in the association or impaired by the termination of such membership; (2) the association renders no services to the University and membership in the association confers no benefit to the University; and (3) payment of the proposed membership dues is not for a public purpose but for a private purpose in contravention of Article X, Section 6, of the Constitution of this State.

West Virginia University, herein sometimes designated as the University, has been a member of the association

continuously since 1930, a period of approximately twenty four years, and during that time has regularly paid its annual dues until the refusal of the defendant to honor the requisition for the payment of its dues for the year 1953-54.

The North Central Association is a voluntary, unincorporated regional accrediting organization which operates in these nineteen states: Arizona, Arkansas, Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, New Mexico, North Dakota, Ohio, Oklahoma, South Dakota, West Virginia, Wisconsin and Wyoming; is a mutual cooperative organization of secondary schools and higher institutions of learning; was founded in 1895; and has been in continuous operation for fifty eight years in the territory in which it functions.

The objects of the North Central Association are: development and maintenance of high standards of excellence for universities, colleges and secondary schools; continued improvement of educational programs and instruction in the field of secondary and higher education; encouragement of such improvement by the application of scientific and professional methods in the solution of educational problems; encouragement and establishment of cooperative relations among secondary schools, colleges and universities in the territory in which it operates; and maintenance of effective working relationships with other regional educational accrediting associations in the United States. Other similar educational accrediting organizations are the Middle States Association, the New England Association, the Southern Association, and the Northwest Association.

The North Central Association functions through an Executive Committee, a Commission on Colleges and Universities, a Commission on Secondary Schools, and a Committee on Research and Service. Each member school is entitled to one vote on any question considered by the association and the institutions that make up its membership determine its policies and perform its functions. Edu-

cational institutions accredited by the association acquire a preferred position in the field of education and in public recognition which renders them more attractive to students and teachers than unaccredited schools. Students who transfer or graduate from an accredited institution are more readily accepted by other colleges and universities than students who transfer or graduate from unaccredited institutions.

The declared purposes of the North Central Association are: (1) To describe the characteristics of institutions worthy of public recognition as institutions of higher education; (2) to guide prospective students in the selection of an institution of higher education that will satisfy their needs; (3) to serve as a guide to individual institutions in such matters as the transfer of students, the conduct of intercollegiate student activities, the placement of college graduates, and the selection of colleges faculties; (4) to assist secondary schools in the selection of teachers and in advising students concerning their choice of institutions and to promote the cooperation of secondary and higher education; and (5) to stimulate the improvement of higher education in the territory served by the association.

The current membership of the North Central Association consists of 378 colleges and 3277 secondary schools. It is asserted that all the States authorized their educational institutions to belong to regional accrediting associations and that all colleges and universities of merit or recognized standing, including state institutions, are members of some regional accrediting association.

The parties have stipulated and conceded, as established facts, that the Board of Governors of West Virginia University is the governing body of the University with respect to its educational, financial and business affairs and that the board is a public corporation; that the Legislature by Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regu-

lar Session, has authorized the Board of Public Works to approve the expenditure of public funds for dues or membership in annual or other voluntary organizations; and that the Board of Public Works has approved the payment of membership dues for the University for the year 1953-54 in the North Central Association. It is also shown that there are sufficient unexpended funds in the state treasury, duly appropriated, for the payment of such membership dues.

Two prominent educators, Dr. Irvin Stewart, President of West Virginia University, and Mr. H. K. Baer, Secretary of the West Virginia Board of Education, testified as witnesses in behalf of the petitioner and the defendant testified as a witness in his own behalf. Dr. Stewart testified that numerous benefits have accrued, and will accrue, to West Virginia University from its membership in the North Central Association. When asked to enumerate those benefits he said: "Among others, membership in the North Central Association facilitates the recruitment and retention of university faculty members. The teachers prefer to teach in institutions which are accredited. In the second place, membership in the North Central Association makes the University a more attractive place for students because students prefer to go to an institution the quality of whose instruction is evidenced by membership in the regional association. In the third place, membership in the North Central Association facilitates the transfer of students to West Virginia University from other schools, and from West Virginia University to other schools. This is particularly important in the field of medical education, as it is practically impossible for a student to get into a medical school unless his pre-medical work has been done in an accredited institution. In the fourth place, the studies made by the North Central Association of institutions within that association makes it possible for the University to compare its performance in the area studied with that of other comparable institutions. In the fifth place, the publications of the Association, including the quarterly, provide information which indi-

cates to us how other institutions have solved problems of common importance, and so enables us to approach our own problems in a somewhat better manner. In the sixth place, at the annual meeting of the Association there is a very good opportunity to exchange views with representatives of other institutions on matters of common interest. In the seventh place, the fact that the North Central Association embraces both colleges and high schools means that it offers an opportunity for study of problems which are jointly of interest to the colleges and the high schools; and in the eighth place, the membership in the Association has a tremendous prestige factor." He also testified that every reputable college in the United States with few exceptions, and every state university, with the present temporary exception of West Virginia University, are members of some regional accrediting association; and that the absence of membership of West Virginia University in the North Central Association would create the false presumption that the character of the work of the University was not equal to that of other comparable state universities.

Mr. Baer testified that he had discussed with the defendant the subject of membership of educational institutions in this State in the North Central Association and the benefits which resulted from such membership. When questioned concerning benefits which he had mentioned in his conversation with the defendant he made this reply: "I recall expressing to him in those several conversations the purpose of this Association, its institutional membership phase, and its efforts in up-grading and maintaining standards for its members. I recall pointing out to Auditor Sims the difficulty students would have in transferring to other educational institutions, particularly to graduate schools, if all or any of our colleges would lose their membership in that Association. I recall also pointing out that over the years without a doubt the standards and the criteria used and published by the Association were the largest single factor in up-grading and improving our educational institutions. I recall also pointing out to him that

graduates or students in our colleges would find themselves either rejected or conditionally admitted to other schools, and I also pointed out that it was not a good healthy academic situation in higher education in West Virginia for our colleges to withdraw from a mutual association of outstanding colleges in the United States."

The defendant testified that he had inquired of certain educators, among them the President of West Virginia University, the Vice President of the University, the Secretary of the West Virginia Board of Education, and a member of the high school division of the office of the State Superintendent of Free Schools, concerning benefits to West Virginia University resulting from membership in the North Central Association and that he was unable to ascertain from them that any benefits were obtained from such membership. On cross-examination with reference to the subject of benefits, he was asked these questions and gave these answers: "Q. The men of whom you inquired in this matter did not tell you of any benefits at all? A. The only reason given by them was that their students would be declassified and de-graded if the institution did not belong to this Association. Q. Did they not enumerate any other matters to you? A. None whatever. Q. Then, as I understand it, Mr. Sims, you take the position that you were unable to determine that there were any benefits from this membership? A. That is my position. Q. It is not your testimony then that there are no benefits to be found, but that you did not find any; is that correct? A. I could not obtain them from the President of the University, the Secretary of the State Board of Education, or Mr. Gibson of the high school division of the State Superintendent's office. Moreover, I demanded in writing a showing of what they did and the price of the work they did, and the answer was not forthcoming. Q. Mr. Sims, as I understand it, you cannot testify then that as a matter of fact there are no benefits to the University from this membership? A. They remained to be proved." He expressed the definite opinion that no benefits resulted to the University from its membership in the North Central

Association and he seeks to justify his refusal to honor the requisition for the reason that, as no benefits result from such membership, the payment of membership dues to such association from public funds is not for a public purpose but is a mere gratuity and is violative of Article X, Section 6, of the Constitution of this State.

The petitioner bases its right to a writ in this proceeding to compel the defendant to honor the requisition for the purpose of paying the membership dues of West Virginia University to the North Central Association for the current year on these two principal grounds: (1) The expenditure of public money in payment of membership dues of a public educational institution in an educational accrediting association is for a public purpose; and (2) the payment of such dues having been authorized by Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regular Session, submitted to the Budget Director, and approved by the Board of Public Works, and there being sufficient funds in the state treasury appropriated for that purpose, it is the mandatory duty of the Auditor to honor the requisition for the payment of such dues.

The first question to be considered is whether the expenditure of public money for the payment of the annual dues of the University to the North Central Association from the appropriation by the Legislature for the payment of such dues is for a public purpose. An appropriation by the Legislature of public revenue for a purely private purpose is beyond its legitimate powers of legislation and, for that reason, is null and void. *State ex rel. Cashman* v. *Sims,* 130 W. Va. 430, 43 S. E. 2d 805, 172 A. L. R. 1389; *State ex rel. Cox* v. *Sims,* 138 W. Va. 482, 77 S. E. 2d 151; *State ex rel. Dyer* v. *Sims,* 134 W. Va. 278, 58 S. E. 2d 766; *State ex rel. Adkins* v. *Sims,* 130 W. Va. 645, 46 S. E. 2d 81; *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A., N. S., 83, Ann. Cas. 1914B, 1278. When, however, the Legislature, under its constitutional power

to appropriate the public funds of the State, makes an appropriation of such funds for a public purpose which is not in conflict with any provision of the Constitution of this State, such appropriation, in the absence of a showing of fraud in its procurement, is within the scope of the legislative power, is valid, and will be upheld by the courts. *State ex rel. West Virginia Board of Education* v. *Sims*, 139 W. Va. 802, 81 S. E. 2d 665; *State ex rel. Roth* v. *Sims*, 139 W. Va. 795, 81 S. E. 2d 670; *State ex rel. West Virginia Commission on Interstate Cooperation* v. *Sims*, 135 W. Va. 257, 63 S. E. 2d 524. See also *State ex rel. The Board of Governors of West Virginia University* v. *Sims*, 134 W. Va. 428, 59 S. E. 2d 705; *State ex rel. Board of Governors of West Virginia University* v. *Sims*, 133 W. Va. 239, 55 S. E. 2d 505; *State ex rel. Bennett* v. *Sims*, 131 W. Va. 312, 48 S. E. 2d 13; *State ex rel. Cashman* v. *Sims*, 130 W. Va. 430, 43 S. E. 2d 805, 172 A. L. R. 1389; *State ex rel. The West Virginia Board of Aeronautics* v. *Sims*, 129 W. Va. 694, 41 S. E. 2d 506; *Kenny* v. *County Court of Webster County*, 124 W. Va. 519, 21 S. E. 2d 385; *The State Road Commission of West Virginia* v. *The County Court of Kanawha County*, 112 W. Va. 98, 163 S. E. 815; *Woodall* v. *Darst*, 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A., N. S., 83, Ann. Cas. 1914B, 1278. "The test of legislative power in this State is constitutional restriction. That which the Constitution of this State does not prohibit the Legislature from doing, and which does not violate the Constitution of the United States, the Legislature may do." *State* v. *Harrison*, 130 W. Va. 246, 43 S. E. 2d 214. See also *State ex rel. Richardson* v. *County Court of Kanawha County*, 138 W. Va. 885, 78 S. E. 2d 569; *State* v. *Blevins*, 131 W. Va. 350, 48 S. E. 2d 174; *Harbert* v. *The County Court of Harrison County*, 129 W. Va. 54, 39 S. E. 2d 177; *Howard* v. *Ferguson*, 116 W. Va. 362, 180 S. E. 529; *The State Road Commission of West Virginia* v. *The County Court of Kanawha County*, 112 W. Va. 98, 163 S. E. 815.

The objects and the purposes of the North Central Association, previously stated, are manifestly in the interest of the furtherance of education in universities, colleges

and secondary schools, and, to the extent that they are pursued and accomplished, improve and promote the system of public education in this State. In fact without the services of that association, the public institutions of higher education and secondary schools which constitute a part of the educational system of this State, including West Virginia University, its foremost public institution of learning, would suffer and incur serious and continuing detriment to their present professional standing. The difficulty and the uncertainty of procuring competent and desirable prospective faculty members for such institutions, the probable future loss of substantial numbers of their present faculty members, and the disadvantages to their present and prospective students which would result from lack of membership in that association would be a severe and lasting blow to their professional welfare and effectiveness in the field of public education.

The testimony of the witnesses produced in behalf of the petitioner shows clearly the numerous benefits which accrue to West Virginia University from membership in the North Central Association and the resultant detriment to that institution in the event it should cease to be a member. The loss of prestige to its professional standing in the educational world and in the opinion of the general public is an important factor which may not be overlooked in appraising the benefits, in the existing circumstances affecting the general situation in the realm of higher and secondary education, which stem from membership in a regional accrediting association. The general character of the testimony of the defendant that, despite his inquiries, he has not been able to ascertain or discover any benefits to the University from its membership in the North Central Association and that, in his opinion, no such benefits accrue, is not a sufficient answer to the numerous specific resultant benefits enumerated in the testimony of the two witnesses produced by the petitioner. From the testimony in its entirety it appears that a continuance of its membership is not only desirable but is practically necessary to maintain the present position and

satisfactory professional standing of the University. Because of the many practical benefits which accrue to the University from membership in the North Central Association and the resultant disadvantages from lack of such membership, the expenditure of public money to pay its membership dues from the funds appropriated by Section 1, Title 2, Chapter 1, Acts of the Legislature, 1953, First Extraordinary Session, for West Virginia University, Account No. 300, Current Expenses, which includes an amount for the payment of dues or membership in annual or other voluntary organizations as provided in Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regular Session, tends to improve and promote the system of public education of this State and, in consequence, is for a public purpose and is not violative of any provision of the Constitution of West Virginia.

The remaining question presented for decision is whether the defendant, a constitutional officer of the executive department of this State, may, in the discharge of the duties of his office, refuse to honor a requisition, regular in form, for the payment of membership dues of West Virginia University, a public educational institution, in a regional educational accrediting association, when the payment of such dues has been authorized and approved by the Board of Public Works, and such requisition has been approved by the Budget Director, and there are sufficient unexpended funds in the state treasury appropriated for that purpose. Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regular Session, provides in part that "Payment for dues or membership in annual or other voluntary organizations shall be made from the proper item or appropriation only after an itemized schedule of such organizations, together with the amount of such dues or membership, has

been submitted to the budget director and approved by the board of public works. A requisition for items of such schedule authorized by the board of public works for payment shall be approved by the director of the budget and honored for payment by the state auditor." This provision expressly empowers the Board of Public Works to authorize and approve the expenditure of public funds for dues or membership in annual or other voluntary organizations and directs the auditor to honor a requisition for that purpose which has been approved by the Budget Director.

As already pointed out, the payment of the membership dues of West Virginia University for the current year has been authorized and approved by the Board of Public Works. The requisition, submitted to the Auditor by the President of the University and Executive Officer of the petitioner, which contains the single item of $350.00, the amount of such dues, has been submitted to and approved by the Budget Director. The appropriation for the purpose has not expired and there are sufficient unexpended funds, which have been so appropriated, in the state treasury to pay the amount of the requisition. Section 5, Article 3, Chapter 12, Code, 1931, is in these words: "When appropriation has been made by law, subject to the order or payable on the requisition of a particular officer, board, or person, the order or requisition in writing of such officer, board, or person shall be sufficient authority to the auditor to issue his warrant for the same or any part thereof: *Provided,* that the appropriation has not expired and the amount thereof shall not be exceeded." The foregoing statutory provisions have been complied with and under those provisions it was the duty of the Auditor to honor the requisition.

The Auditor in the discharge of his duties has the right, in a mandamus proceeding to compel him to honor a requisition for the payment of public funds appropriated by the Legislature, to question the constitutionality of the appropriation, *State ex rel. West Virginia Board of Education* v. *Sims,* 139 W. Va. 802, 81 S. E. 2d 665; *Woodall* v. *Darst,* 71 W. Va. 350, 77 S. E. 264, 80 S. E. 367, 44 L. R. A.,

N. S., 83, Ann. Cas. 1914B, 1278; but it has been said that if an administrative officer refuses to act under a statute on the ground of its unconstitutionality he does so at his peril and that if he is mistaken he is liable for nonfeasance of duty. See *Payne* v. *Staunton*, 55 W. Va. 202, 46 S. E. 927. The Auditor, however, does not have the right to substitute his opinion or judgment for that of the Board of Public Works in authorizing and approving the expenditure of public funds for the payment of membership dues of a public educational institution in an educational accrediting organization, or of the Budget Director in approving a requisition for such expenditure, or to question the wisdom, the propriety or the necessity of such action by the Board of Public Works or the Budget Director, or the policy of the Legislature in enacting Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regular Session, and in appropriating funds for the payment of dues and membership in the organizations mentioned in that section of the statute. *State ex rel. West Virginia Board of Education* v. *Sims*, 139 W. Va. 802, 81 S. E. 2d 665.

When a requisition regular in form and properly itemized for the payment of annual membership dues of a public educational institution in this State to a regional educational accrediting association is submitted to the Auditor and the expenditure of public money in payment of such dues has been authorized and approved by the Board of Public Works and such requisition has been approved by the Budget Director, as provided by Section 11, Article 3, Chapter 12, Code, 1931, as amended by Section 11, Article 3, Chapter 125, Acts of the Legislature, 1945, Regular Session, and by Section 11, Article 3, Chapter 158, Acts of the Legislature, 1951, Regular Session, and there are sufficient unexpended funds appropriated for the purpose in the state treasury to pay such dues, it is the mandatory duty of the Auditor to honor the requisition; and mandamus lies to compel him to perform that act. "A peremptory writ of mandamus will issue to require the discharge by a

public official of a non-discretionary duty." Point 4, Syllabus, *Glover* v. *Sims,* 121 W. Va. 407, 3 S. E. 2d 612; *State ex rel. The West Virginia Board of Aeronautics* v. *Sims,* 129 W. Va. 694, 41 S. E. 2d 506; *State ex rel. West Virginia Commission on Interstate Cooperation* v. *Sims,* 135 W. Va. 257, 63 S. E. 2d 524.

As the requisition calls for the expenditure of public money for a public purpose and is duly authorized and valid, the writ as prayed for in the petition is awarded.

*Writ awarded.*