STATE *ex rel.* MARGARET G. LIPPERT

*v.*

EDGAR B. SIMS, *Auditor*

(No. 10958)

Submitted May 6, 1958. Decided May 27, 1958.

*D. Boone Dawson,* for relator.

*W. W. Barron,* Attorney General, *W. Bernard Smith,* Assistant Attorney General, for respondent.

BROWNING, JUDGE:

Margaret G. Lippert, an employee of the Department of Public Assistance, seeks a writ of mandamus directed to the respondent, Edgar B. Sims, Auditor, commanding him to honor a payroll requisition and validate a check, in the amount of $2,104.33, issued by the Department of Public Assistance to the petitioner as wages for the period April 16, 1957 to November 30, 1957, inclusive.

The petition alleges that: Petitioner's employment with the Department of Public Assistance is under the Merit System; her ratings were "excellent", the last one being on January 1, 1957; on March 7, 1957, she was arrested while at work and accused of larceny of checks payable to the Department of Public Assistance; after hearing, the case against her was dismissed by the prosecuting attorney for lack of evidence; the evidence was later presented to a Grand Jury of Kanawha County which refused to indict; the Director of the Department, subsequent to March 7, 1957, refused to permit her to return to work, and, on March 28, 1957, requested her resignation, which petitioner refused to submit; the Director then filed charges against petitioner alleging negligence and inefficiency in the performance of her duties; upon appeal to the Merit System Council, the charges were not sustained and it was recommended that consideration be given to the reinstatement of petitioner; the Director refused to reinstate petitioner; and, on November 12, 1957, the present Director did reinstate petitioner and caused the payroll requisition and check to be issued, which respondent refused to honor.

Respondent answered, admitting the material allegations of the petition, but denying that petitioner has been reinstated, averring the specific refusal to reinstate by the former Director on July 25, 1957.

Petitioner then replied to respondent's answer asserting that the former Director had no authority to disregard the recommendation of the Merit System Council, thus the refusal to reinstate had no validity, to which reply the respondent demurred, assigning as grounds: (1) The decision of the Merit System Council as to the reinstatement of an employee is not binding upon the Director of a participating agency, and (2) the present Director was unauthorized to issue the requisition here in question as it is contrary to the provisions of Code, 12-3-10, which requires an itemization of any claim against the State, and Code, 12-3-13, which provides: "No money shall be drawn from the treasury to pay the salary of any officer or employee before his services have been rendered."

The only legislation upon this question is Chapter 108, Acts of the Legislature, Regular Session, 1947, which is now contained in Michie's West Virginia Code of 1955 as Article 6 of Chapter 29, which is titled Merit System Council, and contains four short sections, the last of which relates only to the operating expenses of the Council. The three other sections have not been amended since the enactment in 1947. The sections are quoted verbatim:

(1) "The merit system council heretofore established by executive order shall be continued, and present members shall continue to serve until the expiration of the terms for which they were appointed. The council shall consist of three members to be appointed by the governor, by and with the advice and consent of the senate, for three year terms, one of which shall end on the thirtieth day of June of each year. The council shall annually elect one of its members to serve as chairman.

"Regular meetings of the council shall be held monthly, and special meetings may be held upon the call of the chairman. The members shall receive an allowance of ten dollars for each day actually spent in attending meetings, and shall be reimbursed for the actual traveling expenses necessarily incurred in the performance of their duties. Such expenses shall be met out of any funds available for the purpose and shall be paid upon certification of the supervisor, in such manner as the expenses of other state officials are paid."

(2) "Upon the recommendation of the council, the governor shall appoint a merit system supervisor, who shall be the chief administrative officer of the council and under its supervision shall direct all its activities.

"The supervisor shall have authority to employ and fix the compensation of such technical and clerical assistants as may be necessary to carry out the purposes of this article.

"The salary and expenses of the supervisor and of the technical and clerical assistants

shall be met out of any funds available for the purpose and shall be paid upon certification of the supervisor, in such manner as the expenses of other state employees are paid."

(3) "The council shall supervise the operation of the joint merit system established for the various state agencies or any part thereof which are permitted or required by state or federal law to employ personnel on a merit basis. The council shall have the authority and it shall be its duty to:

"(1) Establish general policies for the administration of the merit system, including the giving of examinations and the hearing of personnel appeals;

"(2) Advise with the supervisor in the formation of rules for the conduct of merit examinations;

"(3) Inspect and review the activities of the supervisor for the purpose of assuring conformity with the rules and policies of the council;

"(4) Review and pass upon the classification and compensation plans of participating state agencies;

"(5) Make recommendations to participating state agencies relative to their internal personnel practices;

"(6) Promote public understanding of the purposes, policies and practices of the merit system."

Pursuant to the statutory provisions heretofore quoted, rules have been adopted and promulgated by the Merit System Council, a copy of which has been filed in this proceeding as Respondent's Exhibit C. These rules consist of approximately seventy-five pages, including appendixes, all of which have been carefully scrutinized, and only the following have any applicability to the issue in this case. At the risk of verbosity, these will be quoted in full:

Preamble: "In order to promote an efficient and economical administration and in order to provide equal opportunity for all qualified persons to compete for positions in the departments and divisions of West Virginia state government operating under a merit system, and in order to conform to the personnel standards of the agencies of the Federal government affiliated with those departments and divisions, and in conformity with Article Six, Chapter 29 of the Code of West Virginia, these rules and regulations have been adopted. Amendments to and additional rules and regulations for the administration of an effective merit system consistent with the standards herein established may be adopted in the manner herein prescribed."

Section 4. Appeal from Dismissal, Suspension, or Demotion:

XII—1. "A permanent employee who is dismissed, suspended or demoted shall have the right to appeal to the Council not later than 30 days after the effective date of the dismissal, suspension or demotion. Such appeal shall be in writing and shall be transmitted to the Supervisor who shall arrange a formal hearing before the Council within 30 days after receipt of the appeal. The Supervisor shall furnish the Personnel Officer of the Agency concerned with a copy of the appeal in advance of the hearing. Both the employee and the Personnel Officer of the agency involved shall be notified reasonably in advance of the time and place of the hearing. The employee and an agency official designated by the appointing authority shall have the right to present witnesses and give evidence before the Council."

XII—2: "The Council, within 10 days after hearing, shall make its recommendations in writing to the Appointing Authority for consideration. After consideration of the Council's recommendation, the Appointing Authority shall make its decision which shall be final and which shall be duly recorded in the permanent records of the Agency. The Personnel Officer shall, in writing, promptly

notify the employee of the decision of the Appointing Authority."

Article XXI—Applicability: "All positions, other than those hereinbefore exempted in Article 1, Definition 14, shall be filled by persons selected on the basis of merit in accordance with this rule. This rule shall apply to all personnel of the State Department of Public Assistance, the County Public Assistance Councils, the Department of Unemployment Compensation, the Department of Health, the Vocational Rehabilitation Division of the State Board of Vocational Education, the State Conservation Commission, and such other agencies which may subsequently affiliate with the Joint Merit System."

It will be observed from a reading of the statutory provisions, and the Rules of the Merit System Council, that there is no provision whatever for the hiring or firing of any employee of any of the departments of government by any one other than the head of that particular department. Section 8, Article 3, Chapter 9, of the Code, as amended, specifically gives the Director of the Department of Public Assistance full power to appoint the heads of the divisions of his department, and to employ such other employees as may be necessary. Perhaps that section should be quoted:

"The director shall appoint the heads of the divisions of the department and shall employ such assistants and employees as may be necessary to the efficient operation of the department, in accordance with the provisions of the merit system of personnel management provided for in subsection seven, section six of this article. * * *"

In the absence of any provision to the contrary, the right to hire necessarily includes the right to discharge.

When the petitioner was discharged from her position in the Department of Public Assistance, she filed a timely appeal from such action to the Merit System Council, and a hearing was held as provided by the Rules, Section 4,

XII—2. Upon a finding by the Council, subsequent to the hearing that the evidence did not warrant her dismissal, the proper official of the department was notified and the Council recommended to the Director in writing that petitioner be reinstated. However, the Director saw fit not to follow the recommendation of the Council, and by his letter of July 25, 1957, addressed to the Council, which is a part of the record herein as Respondent's Exhibit A, declined to follow the recommendation, and, instead, informed the Council that the dismissal would not be disturbed. In this letter, the Director quoted this sentence from Rules, Section 4, XII-2: "After consideration of the Council's recommendation, the Appointing Authority shall make its decision which shall be final and which shall be duly recorded in the permanent records of the Agency." The record before this Court is silent as to what transpired thereafter until November 12, 1957, when Mr. Thomas R. Egbert, who had in the meantime succeeded Mr. Roth as Director of the department, wrote the petitioner the following letter, which is filed as Petitioner's Exhibit A:

"We wish to offer you the opportunity to resume employment with the Department of Public Assistance as a Chief Clerk in the Division of Research and Statistics. This is the same job classification and you will assume the same salary step as you would have normally occupied which is in accord with the Merit System regulations. The work in the Division of Research and Statistics is closely related to the Division in which you were working.

"The position is now open and we request that you begin work upon receipt of this letter."

As heretofore stated, as soon as she resumed employment in the department, the check in the sum of $2,104.33 was issued covering salary to which she would have been entitled had she been employed between April 16, 1957 and November 12, 1957, inclusive. There is no allegation in this record that the petitioner rendered any services of

any kind to the State of West Virginia between the dates above mentioned.

Code, 12-3-13, provides that: "No money shall be drawn from the treasury to pay the salary of any officer or employee before his services have been rendered." Although the primary purpose of that legislation may have been to prohibit the payment of salaries of State employees prior to the end of each month, it is certainly broad enough if any such legislation was needed to prohibit the payment to any person who had rendered no service to the State. The disbursement of funds appropriated for the administrative operation of the Department of Public Assistance is subject to the law of this State. In the absence of valid legislation to the contrary, the Director of that department has no authority to make requisition for the payment of any claim for personal services unless and until such services have been performed. Code, 12-3-10, provides:

> "It shall be unlawful for any state officer to issue his requisition on the state auditor in payment of any claim unless an itemized account is filed in the office of the officer issuing the requisition. If the account is for services, it shall show the kind of service, dates when performed and names of persons performing the service; if the account is for materials or supplies, it shall show in detail the kind of material or supplies, the quantity, dates of delivery and to whom delivered; and if the account is for automobile hire or other transportation, it shall show the date, from where, to where, and the purpose of the expenditure. No account shall contain an item designated as 'sundry,' 'miscellaneous,' or by terms of like general nature."

However, this Court has held that an appropriation by the Legislature, in discharge of a moral obligation of the State, is for a public purpose. *State* v. *Sims*, 130 W. Va. 645, 46 S. E. 2d. 81. In a number of cases, this Court has sustained the validity of special acts of the Legislature approving such claims and appropriating funds for pay-

ment thereof under circumstances which constitute a "moral obligation" of the State toward such individuals. *Weekley* v. *Sims,* 139 W. Va. 263, 79 S. E. 2d. 847, and many cases cited in the opinion therein. But the requisite steps to the establishment of such a claim by this petitioner, particularly a special act of the Legislature approving it and an appropriation of funds to pay it, have not been complied with, so that question is not before this Court.

It is obvious from this record that the Director of the Department of Public Assistance decided not to accept the recommendation of the Merit System Council that the petitioner be reinstated, and that, under the statutory provisions and Rules of the Council heretofore quoted, such decision became final. The letter of November 12, 1957, of Mr. Egbert, who was Director at that time, does not purport to reinstate the petitioner in the position which she formerly held, but merely informs her that she is "to resume employment" in a different position than the one she held at the time she was dismissed. Even if the November 12 letter could be construed as a reinstatement of the petitioner, pursuant to the recommendation of the Merit System Council, there is no provision in the statute, or in the Rules of the Council, to the effect that a dismissed employee may be paid for the period subsequent to his dismissal and previous to his reinstatement. In sharp contrast to these provisions of the statute are the provisions of Code, 8-6A-13, with relation to the removal, discharge, or reduction in rank or pay of a member of a paid fire department of a municipality, where such employment is governed by a civil service commission. That section provides in part that: "* * * In event that the civil service commission fails to justify the action of the removing officer, then the person sought to be removed shall be reinstated with full pay for the entire period during which he may have been prevented from performing his usual employment, and no charges be officially recorded against his record. * * *"

The Auditor is a constitutional officer of the State. This Court has repeatedly held that in the discharge of his duties, he has the right to question the constitutionality of an appropriation of the Legislature. *State ex rel. Board of Education* v. *Sims,* 139 W. Va. 802, 81 S. E. 2d. 665. If he has that power, he certainly has the power to question the propriety of a requisition where no specific appropriation has been made by the Legislature therefor.

This proceeding is clearly distinguishable from *State ex rel. Board of Governors of West Virginia University* v. *Sims,* 140 W. Va. 64, 82 S. E. 2d. 321. If there is any relief which the law can afford this petitioner for the wrong which she alleges in her petition, it is not by way of mandamus against the Auditor to require him to honor the requisition, and the check in the sum of $2,104.33 issued by the Director of the Department of Public Assistance, payable to her as salary for the period April 16, 1957 to November 30, 1957, inclusive. Mandamus is an extraordinary remedy in which the petitioner must show a clear legal right to the relief sought. This the petitioner has not done.

The writ will be denied, and the rule discharged.

*Writ denied.*