STATE *ex rel.* HERCULES TIRE & RUBBER SUPPLY CO. OF W. VA., WHOLESALE DIVISION OF H. & I. AUTO SUPPLY CO., INC., *a Corp.*

*v.*

TRUMAN E. GORE, INDIVIDUALLY, *etc., et al.*

(No. 12723)

Submitted February 6, 1968.    Decided February 27, 1968.

BERRY, PRESIDENT, dissenting.

*Stanley E. Preiser, Michael Tomasky,* for relator.

*C. Donald Robertson,* Attorney General, *Thomas P. O'Brien,* Assistant Attorney General, for respondents.

BROWNING, JUDGE:

Hercules Tire and Rubber Supply Company of West Virginia, Wholesale Division of H. & I. Auto Supply Co., Inc., a corporation, hereinafter referred to as Hercules or petitioner, filed an application in this Court on December 13, 1967, praying for a writ of mandamus directing the respondents, Truman E. Gore, hereinafter referred to as respondent, and Clarence E. Johnson, hereinafter referred to as director, individually and as commissioner of the department of finance and administration and director of the purchasing division of the department of finance and administration, respectively, to honor the bid of petitioner with respect to certain commodities to be furnished the state, to execute a contract therefor, and to make payment for items previously delivered. The petition, after alleging full compliance with the law governing certain preliminary aspects, alleges in substance that: on January 17, 1967, the state road commission and other spending units of the state delivered a requisition to the director of purchases requesting the purchase of certain tires and tubes; the director advertised for and solicited bids for such items, receiving eight bids thereon; the director found the petitioner to be the lowest responsible bidder and executed and signed a "contract" with petitioner; the "contract" was then submitted to the respondent Gore, who refused to sign it and

has refused to submit it to the attorney general for approval as to form, all in violation of his duties as required by law. Attached to the petition as exhibits are: the requisition of the state road commission dated January 17, 1967, which contains the notation, "This requisition is automatically cancelled sixty days from date of issue if bids have not been asked for."; the "contract" awarded to petitioner and signed by the director of purchases; the invitation to bid, designated as bid No. Z-51; various exhibits relating to the requirements of law and supporting petitioner's allegation that the tires proposed to be furnished by him comply with the specifications; and several affidavits of persons in the tire industry that the specifications contained in the solicitation for bids were readily understandable by such persons.

This Court issued a rule to show cause why the writ should not issue as prayed for on January 22, 1968, returnable February 6, 1968, at which time the respondents appeared and interposed a demurrer to the petition, on the ground that the respondent Johnson is not now, and has not been since December 31, 1967, the director of purchases and the writ against him would be unavailing, and answered admitting the technical allegations of the petition but asserting that: the requisition is void by its own terms; the specifications are vague and imprecise; the bids submitted are not responsive; and denying that a contract was ever entered into between petitioner and the director of purchases, or that the respondent Gore owes any duty to petitioner to execute the alleged contract. Appended to the answer as an exhibit is a letter of the attorney general directed to the respondent Gore objecting to the form of the proposed contract on the grounds that the performance bond furnished by petitioner is incomplete in that the signatures were not notarized and that certain words with regard to emergencies were not used. (It is alleged in the petition that these errors in form have been corrected.) The letter goes on to state that while it is not the attorney general's responsibility, nevertheless his observations are: that no standard specifications have been developed by the division of purchases; the specifications of the bid invita-

tions were vague and uncertain, resulting in considerable confusion; and, accordingly, recommended that all bids be rejected and new bids invited upon precise and definite specifications.

Petitioner filed a replication, denying the allegations of the answer, and also moved for a peremptory writ of mandamus notwithstanding the answer on the grounds that the answer is insufficient in law and that petitioner has established a prima facie case by the petition and exhibits which has not been refuted by the respondent.

Code, 5A-3-3, as amended, provides, in part as follows:

"The director, under the direction and supervision of the commissioner, shall be the executive officer of the purchasing division and shall have the power and duty to:

"* * *

" (8) Examine the provisions and terms of every contract entered into for and on behalf of the State of West Virginia which imposes any obligation upon the State to pay any sums of money or perform any particular service or do any act or deed, and approve said contract as to said provisions and terms; and the duty of examination and approval herein set forth shall not supersede the responsibility and duty of the attorney general to approve said contracts as to form: Provided, that the provisions of this subdivision shall not apply in any respect whatever to contracts entered into by the State road commissioner or commission."

Code, 5A-3-14, as amended, provides, in part:

"Bids shall be based on the standard specifications promulgated and adopted in accordance with the provisions of section five of this article. All open market orders, purchases based on advertised bid requests, *or contracts made by the director or by a State department shall be awarded to the lowest responsible bidder,* taking into consideration the qualities of the articles to be supplied, their conformity with specifications, their suitability to the requirements of the State government, and the delivery terms. Any or all bids may be rejected. If all bids received on a pending contract are for the same unit price or total amount, the director

> shall have authority to reject all bids, and to purchase the required commodities and printing in the open market, if the price paid in the open market does not exceed the bid prices." (Italics supplied.)

Code, 5A-3-15, as amended provides:

> "Contracts shall be signed by the commissioner in the name of the State. They shall be approved as to form by the attorney general. A contract that requires more than six months for its fulfillment shall be filed with the State auditor."

The position taken by the respondent in brief and argument is that the language heretofore quoted with regard to supervision and control empowers him to refuse to sign any "contract" entered into by the director in the name of the state for purchasing commodities for a department of the state government. That is not the position that the respondent took when the matter was in controversy in his office and it was not the position that his statutory attorney, the attorney general, took at that time. It was the contention of both the respondent and the attorney general then that the contract with Hercules should be cancelled for factual reasons. It was their contention then that the contract could and should be cancelled because the advertisements for bids for the tires did not meet the requirements as to standards and specifications. Apparently a "hearing" was held, subsequent to the finding by the director that the petitioner was the lowest responsible bidder, at which the unsuccessful bidders and perhaps others apparently voiced their sentiments with regard to the matter and such became the basis for the ruling of the attorney general and the decision of the respondent to remain adamant in his position with regard to signing the contract. As will be noted hereinafter there is no attempt by the attorney general in this Court to refute the evidence by way of exhibits filed with the petition upon the factual issue of whether the invitation to bid was clear and unambiguous or whether it was vague and uncertain.

First, as to the legal question. Each of the sections hereinafter referred to is contained in Chapter 5A, Article 3 of the Code of West Virginia, as amended, and all italics are those of the writer of this opinion.

Section 2 provides that "The *director* shall keep in his office accurate books, * * *" which shall be available at all proper times for inspection by any taxpayer of this state. Section 3 provides that "The *director,* under the direction and supervision of the commissioner, shall be the executive officer * * * and have the power and duty to:

"(1) Purchase or contract for, in the name of the State, the commodities and printing required by the departments of the State government;

"* * *

"(7) Recommend to the commissioner that the right and privilege of a person to bid on State purchases be suspended when the director has evidence that such person has violated any of the provisions of the purchasing law or the rules and regulations of the *director.*"

Although there are several other specific powers given to the director by that section, the one listed as subsection 8 clearly and unequivocally provides that the *director* shall:

"(8) Examine the provisions and terms of every contract entered into for and on behalf of the State of West Virginia which imposes any obligation upon the State to pay any sums of money or perform any particular service or do any act or deed, *and approve said contract as to said provisions and terms;* and the duty of examination and approval herein set forth shall not supersede the responsibility and duty of the attorney general to approve said contracts *as to form:* * * *."

Section 4 provides that "The *director* shall adopt and amend rules and regulations to: * * *." and such section has 7 subsections all related to the power of the director to authorize direct purchases by the various departments and to prescribe the manner and terms upon which such direct purchases shall be made. Section 5 provides that "The *director* shall classify all commodities and shall promulgate and adopt a schedule of standard specifications based on scientific and technical data, * * *. The purchases of no department may be exempt from compliance with the standard specifications so established, * * *." In interpreting this section the attorney general in an advisory

opinion held that the power granted to the director by this section to adopt standard specifications for commodities required by the state road commissioner is vested in the state director of purchases. 46 Ops. Att'y Gen. 88 (1954). Section 6 provides that "The Commissioner may from time to time request any official or employee of any department to aid and advise the *director* in formulating, revising or amending the schedule of standard specifications provided for in section five * * *." Section 7 provides that "The *director* shall, in the purchases of commodities and printing, give preference * * * to commodities and printing produced in this State." and further that "the *director* may, * * * give preference, * * * to commodities and printing produced and offered for sale by nonprofit workshops, * * *." Section 8 provides that "The *director* shall advise with the heads of the various State institutions producing commodities, with the view to making these articles suitable for the needs of State departments." Section 9 provides that "The *director* shall make available the facilities and services of his department to county, school, municipal and other local governmental bodies within this State. * * * ." Section 10 provides that "Within the limits of funds available for the purpose, the *director*, * * * shall examine and test upon delivery commodities purchased by the State to determine whether such commodities conform to the standard specifications promulgated pursuant to section five * * *." Section 12 provides that "The *director* shall solicit sealed bids for the purchase of commodities and printing * * * ." and provides for the manner in which this is to be carried out. Section 13 provides that "The *director* may make a purchase of commodities and printing of less than two thousand dollars in amount in the open market, * * * ." Section 14 provides that all bids shall be based on standard specifications; that "contracts made by the *director* or by a State department shall be awarded to the lowest responsible bidder, * * *"; and that a record of the bids, after awarding of the contract, shall be open to public inspection. It further provides that "Any or all bids may be rejected." If there could be any doubt as to whom the power of rejection is given by that sentence when all of

the other sections are read with it, the succeeding sentence is clarifying: "If all bids received on a pending contract are for the same unit price or total amount, the *director* shall have authority to reject all bids, * * *." Section 14a provides that "The *director* shall reject any bid received from any vendor * * *" unless certain conditions have been met, including prequalification disclosure by vendors, etc. Section 17 provides that "The *director* may authorize, in writing, * * *" emergency purchases in the open market by state departments. Section 18 creates a special fund "to be administered by the *director*" to facilitate certain functions of the director. Section 21 provides "* * * the *director* may, upon the recommendation of a State department, purchase from the government of the United States, commodities or equipment, by tendering bids therefor." Section 23 provides that "The *director* shall have the exclusive power and authority * * *" to dispose of expendable commodities owned by the state; to determine what commodities shall be so disposed of; the manner of such disposal; and the price to be paid by the receiving department or others for commodities disposed of. Section 24 provides that "The *director* shall contract for public printing * * *", etc. Section 39 provides that the commissioner shall have the power and authority to suspend the right and privilege of a person to bid on state purchases for a period not to exceed one year but the section says that this may be done "upon the recommendation of the *director*."

A review of the pertinent sections of the statute convinces this Court that the legislature intended to and did give the director the administrative power and authority to supervise and direct the purchases of commodities for the state. Section 8, heretofore quoted, which provides that the director shall "approve said contract as to said *provisions and terms;*" leaves no doubt as to where the real power lies in this regard. The clause which follows re-emphasizes the fact that "the responsibility and duty of the attorney general" is merely to approve such contracts *as to form*. It is not clear and we are not called upon to determine in this case the exact meaning of the language contained in Section 3 that the director, "under the

direction and supervision of the commissioner," shall have certain powers, etc. Whatever authority that language may confer upon the commissioner, such general language cannot supersede the specific, clear and unambiguous language of the sections that follow relating to the powers of the director. Whether it is wise or unwise for the legislature to create a public official and give him the enormous powers which it has given to the director of purchases and then provide that he shall be a division head of one of the departments of government of this state is not a matter for determination by this Court. Many times have we stated and we now reiterate that unless clearly prohibited by the constitution of this state or of the United States there is no limitation upon what action the legislature may take whether it affects the executive, judicial or legislative branch of the government. The defense offered by the respondent to the effect that the applicable statutes give him the authority, without giving any reason therefor, to invalidate any contract coming to him from the director of purchases is without merit and we so hold.

There is no principle of law in controversy between Hercules and the respondent with regard to the efficacy of the remedy sought to be invoked. All agree that mandamus is an extraordinary remedy and will not issue unless three elements coexist— (1) the existence of a clear right to the relief sought; (2) the existence of a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy at law. *State ex rel. Damron* v. *Ferrell,* 149 W. Va. 773, 143 S. E. 2d 469. This Court is always acutely aware of the provisions of Article V, Section 1 of the Constitution of this state which provides that the legislative, executive and judicial departments or branches of government shall remain separate and that neither shall invade the province of the other with the one exception therein stated. Therefore when the constitutionality of an act of the legislature is brought to our attention and we must determine whether it is valid or invalid under the provisions of the constitution of this state or of the United States or when a decision of an official of the executive branch of the government is

contested in practically the only way that it can be, that is, by requiring such official by writ of mandamus to comply with what is alleged to be his clear duty as provided by the constitution or a valid statute, we examine the merit of such a proceeding with the utmost care and caution. But no longer is it questioned that the judicial branch of the government has the power and duty to act in such cases.

Whether the writ of mandamus should issue in this case or be denied is a mixed question of law and fact. By the replication of Hercules the allegations contained in the answer of respondent became contested questions of fact to be determined by the evidence submitted by the parties. Chapter 76, Acts of the Legislature, 1935, thereafter Chapter 25A of the Code of West Virginia, 1931, as amended, consolidated practically all purchasing by the executive departments of government in a department of purchases. Under the statute the director of that department was to be appointed by the governor with the advice and consent of the senate and serve at the will and pleasure of the governor. By Chapter 132, Acts of the Legislature, 1961, the purchasing department was abolished as such and became a division of the department of finance and administration. A careful analysis of the two acts shows that the only substantial change under which the purchasing director was to operate thereafter was this provision in Code, 5A-3-3, as amended, Article 3 thereof being devoted exclusively to the status and duties of the director of purchases: "The director, under the direction and supervision of the commissioner, shall be the executive officer of the purchasing division * * *." Upon the phrase "direction and supervision" contained in that section and upon this part of Code, 5A-3-15, as amended, "Contracts shall be signed by the commissioner in the name of the State. They shall be approved as to form by the attorney general.", does the respondent defend his action in "cancelling" the bid of Hercules and directing the director to resubmit the bids for the products in question. Perhaps he relies also upon a letter opinion of the attorney general which relates not only to the form of the contested contract but includes an opinion also as to the merits of the contract. This state-

ment is contained in that communication: "It is not, and ought not to be, the attorney general's responsibility to determine whether or not a particular product meets all of the standards and specifications of a bid." Notwithstanding the attorney general's denial of authority or ability in that field he proceeded to do exactly what he said he did not have the authority to do and recommended that all bids which had been received, including that of Hercules, for the tire contract be rejected and that "new bids upon adequate exacting specifications which are sufficiently detailed, definite and precise as outlined herein" be advertised for and considered.

We do not say that the commissioner must affix his signature to every contract or instrument, it is not a contract before it is signed by him, and can envision circumstances under which it would be his duty not to sign such a contract. For example, if the director should accept the bid of the highest not the lowest responsible bidder or if there was evidence of fraud or corruption, the commissioner would be justified in refusing to sign such a contract and certainly this Court would not force him to do so in the extraordinary remedy of mandamus. But such is not the case here. We are deciding this case only upon its facts and they show clearly that Hercules was the lowest bidder, that it was a responsible bidder, that it was a West Virginia corporation, that it submitted its check in the sum of $2,500.00 as required by the rules and regulations of the director, and that it gave the necessary bond with one of the leading companies in the United States as surety. That leaves only a determination of whether the commissioner was justified in refusing this contract because the bidders were confused by the specifications contained in the advertisements and requests for bids because "they were ambiguous, vague and uncertain." The evidence by way of exhibits such as affidavits, etc., filed with the petition in this case overwhelmingly shows that those who are experts in such matters were not misled by the specifications contained in the advertisements and other requests for bids by the director. A few of these exhibits will be briefly quoted from and, to repeat, the respondent, by

counsel, made no serious effort to contradict this evidence. Why those who demanded the "hearing" in an effort to have the bid of Hercules rejected did not come forward and give their reasons so that this Court could consider them we, of course, do not know. Thomas C. Johnson, Vice President in charge of sales for the Mohawk Rubber Company of Akron, Ohio, *an unsuccessful bidder,* said in his affidavit that from a reading of the invitation to bid "any person experienced and knowledgable in the tire industry would know the meaning of the terms used in the bid, that the terms are terms used in the industry and are not vague, imprecise or uncertain; that the terms used could not cause confusion as to quality, material, quantity, price or size." In his affidavit, Richard F. Golden, President of West Virginia-Mohawk Tire Supply, Inc., with twenty-two years experience in the tire and tube business, stated that the language used in the invitation to bid was not "vague, imprecise or uncertain; that the terms used could not cause confusion as to quality, material, quantity, price or size." This affiant further stated that his firm did not bid because the terms were "in fact so precise and definitive in every respect" that it realized it could not meet the requirements or specifications. In the affidavit of John A. Hoag, President of Hercules Tire & Rubber Company, Findlay, Ohio, he affirms that Hercules tires and tubes have met all federal specifications and that the Hercules tire is on the approved list of the United States government; that the tires specified under Invitation Bid No. Z-51 are "100 level original equipment quality and are equal to all tires listed under current VESC Schedule." Affiant further stated that his company supplied tires and tubes in large quantities to the states of Florida, Mississippi, Tennessee, Virginia, to many cities and many other governmental and private agencies. As heretofore stated there are many more affidavits and exhibits to the same effect but this opinion will not be encumbered by further quotations therefrom.

It is of no consequence in this proceeding whether the agreement between Hercules and the pertinent officials of the department of finance and administration became a "contract" when it was presented to the respondent Gore

for his signature or whether the latter's signature was necessary to transform the agreement into a valid contract as that term is used in the statute.

The rule as to respondent Johnson will be discharged inasmuch as there is no showing by allegation or proof that he has refused or failed to do any act required of him by law to effectuate and implement the contract between the state and the petitioner Hercules.

It is the view of this Court that the petitioner Hercules has a clear right to the relief sought, that there exists a legal duty imposed by statute upon the law and the facts of this case upon respondent Gore to perform the act, to-wit, sign the contract with Hercules, which the petitioner seeks to compel and that the petitioner Hercules has no adequate remedy at law other than mandamus. For the reasons stated herein the writ will be awarded against the respondent, Truman E. Gore, Commissioner of the Department of Finance and Administration of the State of West Virginia, only and the rule will be discharged as to the respondent Johnson.

*Writ awarded.*

BERRY, PRESIDENT, dissenting:

I respectfully dissent from the majority opinion in this mandamus proceeding. My reasons are quite simple. It merely allows a subordinate to prevail over his superior in connection with the purchase of tires for the State of West Virginia. If this is allowed to prevail in all cases it opens the door to many difficulties.

The law is clear with regard to the status of the director of purchases and the commissioner of the department of finance and administration at the time the matters arose in connection with this proceeding. The head of the department of finance and administration is the commissioner. One of the divisions under the department of finance and administration is the director of purchases. Code, 5A-1-1, as amended. This statement is clearly set out by virtue of the provisions of Code, 5A-1-2, as amended, and can not be disputed. This statute relative thereto reads in part as

follows: "The department of finance and administration and the office of commissioner of finance and administration are hereby created in the State government. *The commissioner shall be the chief executive officer of the department and director of the budget* and shall be appointed by the governor, by and with the advice and consent of the senate, for a term not exceeding the term of the governor. * * * *There shall be in the department of finance and administration a budget division, a purchasing division and a general services division. Each division shall be headed by a director, who shall be appointed by the commissioner to serve at his will and pleasure.*" (Emphasis supplied.)

The director of purchases at the time the bids on the tires involved in the case at bar were let determined that the bids submitted by the petitioners should be awarded, signed the contract and demanded that his superior approve it. Apparently, there was some question in the mind of the chief executive officer of the department of finance and administration with regard to the bids in question and he sought the advice of his statutory attorney, the Attorney General for the State of West Virginia, who did not approve the awarding of the contract and advised against the execution of the contract. The proceeding in mandamus in this case shows that the then director of purchases desired that the petitioners' bid be accepted and apparently attempted to execute the contract even after a public hearing, which clearly shows that the commissioner, the chief executive officer of the department, did not approve the action of his subordinate, the director of purchases, and the law relative thereto clearly provides that any of the powers and duties given to the director are all "* * * *under the direction and supervision of the commissioner* * * *"*. Code, 5A-3-3, as amended. (Emphasis supplied.)

The law governing such matters involved in this proceeding is that all bids shall be based on standard specifications promulgated and adopted by the director under the direction and supervision of the commissioner. Code, 5A-3-14, as amended, and Code, 5A-3-3, as amended. All open market orders, purchases based on advertised bid requests, or contracts made by the director under the di-

rection and supervision of the commissioner shall be awarded to the lowest responsible bidder, taking into consideration the qualities of the articles to be supplied, their conformity with specifications, their suitability to the requirements of the state government, and the delivery terms, all of which is under the direction and supervision of the commissioner. Code, 5A-3-14, as amended, and Code, 5A-3-3, as amended.

It is further provided by law, without any qualification, that: "Any or all bids may be rejected." Code, 5A-3-14, as amended. This clearly means to me that the commissioner of the department of finance and administration may reject any and all bids if the law made and provided for the operation of the department of finance and administration means what it says, i.e., that such matters are under the direction and supervision of the commissioner, as provided in Code, 5A-3-3, as amended.

The director of purchases is an employee of the commissioner, appointed by him to serve at his will and pleasure. He is merely the head of one of the divisions of the department of finance and administration; and subject to the direction and supervision of the head of the department, all of his actions are controlled by the said head of the department and the law never intended that there should be a confrontation and controversy with regard to any bids for the purchase of goods or property for the State of West Virginia between the director of purchases and his supervisor, the commissioner of the department of finance and administration.

Although the purported contract was signed by the director of purchases there was no authorization in the law pertaining to such contract for any execution by the director. The law clearly provides that all such contracts shall be signed by the commissioner in the name of the State and be approved as to form by the Attorney General. Code, 5A-3-15, as amended.

If the commissioner of finance and administration directed the director of purchases to reject all bids, which he did in the instant case, all bids should have been rejected and

new bids obtained. This was not done. What has been done is to compel the commissioner to do what the director wanted him to do. Therefore, I am of the opinion the writ should not have been granted in this case.