STATE *ex rel.* BACHE & CO., INC.

*v.*

HONORABLE DENZIL L. GAINER, *Auditor of the State of West Virginia*

(No. 12983)

Submitted September 22, 1970.     Decided October 20, 1970.

*Spilman, Thomas, Battle & Klostermeyer, Howard R. Klostermeyer, George G. Guthrie,* for relator.

*Chauncey H. Browning, Jr.,* Attorney General, *Cletus B. Hanley,* Deputy Attorney General, *Victor A. Barone,* Assistant Attorney General, for respondent.

HAYMOND, JUDGE:

This is an original mandamus proceeding instituted in this Court in June 1970. The petitioner, Bache & Co., Inc., hereinafter sometimes referred to as Bache, seeks a writ to require

the defendant, Honorable Denzil L. Gainer, Auditor of the State of West Virginia, to issue a warrant upon the Treasurer of the State of West Virginia for payment to the petitioner of the sum of $81,000.00 from the State Road Fund of the State of West Virginia for services rendered by the petitioner in connection with the sale by the Governor of road bonds in the amount of $90,000,000.00 during the fiscal year ending June 30, 1970.

Upon the petition and its exhibits this Court issued a rule returnable September 2, 1970. By agreement of the parties the hearing of this proceeding was continued until September 22, 1970, at which time it was submitted for decision upon the petition and its exhibits, the answer of the defendant, the depositions of J. Henry Francis, Jr. and Edward F. Wrightsman, in behalf of the petitioner, and the deposition of John H. Kelly, Treasurer of the State of West Virginia, in behalf of the defendant, the motion of the petitioner to strike certain portions of the cross-examination of the witnesses in behalf of the petitioner and certain portions of the testimony of the witness in behalf of the defendant, and the briefs and the oral arguments of the attorneys in behalf of the respective parties.

The testimony in behalf of the petitioner was to the effect that the charge of the petitioner in connection with the sale of $90,000,000.00 face amount general obligation road bonds, pursuant to a financial advisor's agreement dated October 28, 1969, between the petitioner and the State of West Virginia, acting by its Governor, Arch A. Moore, Jr., was a necessary expense within the meaning of Chapters 125 and 126, Acts of the Legislature, Regular Session, 1969; and the testimony in behalf of the defendant was to the effect that such charge was not a necessary expense and that the bonds could have been sold without such expense by the Treasurer of the State of West Virginia who had previously negotiated the sale of several previous bond issues of the State. Except for that conflict in the evidence, there is little, if any, dispute in the material facts in this proceeding.

The controlling question for decision is whether the defendant is required by law to issue his warrant on the State

treasurer for payment to the petitioner of the sum of $81,000.-00 which the State of West Virginia, by written contract dated October 28, 1969 between the petitioner and the State of West Virginia, acting by its Governor, agreed to pay the petitioner for services as financial advisor in connection with the issuance and sale by the Governor of $90,000,000.00 of general obligation bonds of the State of West Virginia.

Other pertinent questions for determination are: (1) Whether the expense incurred by the Governor in the sale of the bonds by him was a necessary expense within the meaning of Chapters 125 and 126, Acts of the Legislature, Regular Session, 1969, and (2) whether the financial advisor's agreement of October 28, 1969, without the approval of the Director of Purchasing and the Attorney General of this State and without the signature of the Commissioner of Finance and Administration, is a valid agreement.

The petitioner contends that under the provisions of Chapters 125 and 126, Acts of the Legislature, Regular Session, 1969, the Governor is authorized to issue and sell general obligation bonds in the amounts of $20,000,000.00 and $70,-000,000.00, or the aggregate of $90,000,000.00, and to incur the sum of $81,000.00 as a necessary expense for the services of the petitioner in connection with such sale and that the defendant, the Auditor of the State of West Virginia, is required to issue his warrant for the payment of that sum to the petitioner. On the contrary the defendant contends that the charge of the petitioner for such services was not a necessary expense for the sale of such bonds and that the agreement with respect to the services of the petitioner in connection with the sale is not valid because it lacks the approval of the Director of Purchasing and the Attorney General of this State and the signature of the Commissioner of Finance and Administration; and the defendant bases his defense against the claim of the petitioner on those two grounds.

By letter dated August 1, 1969, William S. Ritchie, Jr., then the State Road Commissioner of West Virginia but now Commissioner of the West Virginia Department of Highways, the office of West Virginia Commissioner of Highways having been created by Chapter 68, Acts of the Legislature, Regular

Session, 1970, advised the Governor with respect to a forecast of the cash receipts and disbursements for the State Road Commission for the period June 1969 through December 1969 that the balance of cash and temporary investments would reach a critical level before October 31, 1969, unless additional funds were made available, recommended that immediate arrangements be made to sell State of West Virginia road bonds as authorized by the Legislature, and stated that in order to avoid the possibility of a cash shortage the funds from the sale should be available to the State Road Commission by September 15, 1969.

In October 1969, J. Henry Francis, a Charleston lawyer and a partner in a local municipal company which dealt in securities, and Edward F. Wrightsman, a Vice President of Bache & Co., Inc., both of whom were experienced in the negotiation and sale of bonds and other securities and were familiar with the financial condition of the State, met with Governor Moore and discussed with him the advantages of hiring a financial advisor in connection with the sale of the bonds because of the size of the issue, the unfavorable conditions in the bond market, and recent ratings of the general obligation bonds of the State. Subsequently the Governor, on October 28, 1969, signed a financial advisor's agreement in behalf of the State with Bache by which it was employed to serve as advisor in connection with the sale and delivery of the bonds in the amount of $90,000,000.00, $20,000,000.00 to be issued under the Constitutional Amendment ratified November 3, 1964, authorizing the issuance of bonds in the amount of $200,000,-000.00, and $70,000,000.00 to be issued under the Constitutional Amendment ratified November 5, 1968, authorizing the issuance of bonds in the amount of $350,000,000.00. The agreement also provided that Bache & Co., Inc. was to receive as compensation the sum of ninety (90) cents for each $1,000.00 of the principal of the bonds sold, the aggregate of such compensation being $81,000.00, the amount of the claim of the petitioner for such services.

Pursuant to the agreement Bache & Co., Inc. prepared a comprehensive official statement dealing in detail with the financial condition of the State, its existing bond issues, the

revenues available for the payment of its indebtedness, and the general economic condition of the State. The preparation of the statement required extensive research and investigation of financial and economic conditions, the use of pertinent data and statistics, and intensive and practically uninterrupted services during the period between the signing of the agreement and the consummation of the sale of the bonds. The statement was presented and explained in detail by the petitioner to Moody's Investor Service and Standard & Poor's Corporation, nationally recognized financial publishers and bond rating houses, and Dun & Bradstreet, a nationally recognized financial credit rating bureau, was circulated to approximately 2,000 prospective purchasers, and was sent to approximately 100 of the branch houses of the petitioner in the United States for direct contact with prospective purchasers.

Pursuant to notice that sealed bids would be received by the Governor on December 1, 1969, the Governor sold the bonds to Halsey, Stuart & Co., managers, associates and affiliates, at the contract price of $90,006,840.00 and accrued interest of $179,550.00 or a total purchase price of $90,186,390.00, and the bonds were issued, countersigned by the defendant as Auditor, and delivered to the purchaser on December 11, 1969, and the sale and delivery of the bonds were certified by the Treasurer of the State of West Virginia on that date.

After the sale of the bonds on December 11, 1969, the petitioner submitted to the Governor a statement of its charge of $81,000.00 for services performed pursuant to the agreement. The statement was transmitted to the State Road Commissioner and at the instance of the Governor was submitted to the defendant January 6, 1970 with the requisition of the State Road Commissioner and the request that the defendant issue a warrant upon the requisition on the State Treasury for payment from the State Road Fund of the charge of the petitioner. On February 5, 1970, the defendant returned to the Commissioner of the Department of Highways the statement of the claim of the petitioner and refused to issue a warrant for the payment of the claim for the stated reasons that such payment was not a necessary expense within the meaning of the

applicable statutes and the financial advisor's agreement lacked the requisite approval and signature of the officers mentioned in Chapter 5A, Article 3, Code, 1931, as amended.

By letter dated May 6, 1970, the Governor again submitted the statement of the petitioner to the Commissioner of the Department of Highways, formerly the State Road Commissioner, and requested him again to requisition the Auditor to issue his warrant for the payment of the charge and certified to the commissioner that the charge was a necessary expense incurred in the execution by the Governor of the Acts of the Legislature and is payable out of the State Road Fund. On May 8, 1970, the Commissioner of the Department of Highways submitted his requisition to the defendant for the issuance of a warrant on the State Treasury for the payment of the charge, and by letter dated May 23, 1970 to the commissioner, the defendant again refused to issue his warrant for the payment of the claim for the same reasons given for his refusal to honor the requisition submitted to the defendant on January 6, 1970. Following that refusal the petitioner instituted this proceeding in June 1970.

If the charge of the petitioner constituted a necessary expense within the meaning of the provisions of Chapter 125 and Chapter 126, Acts of the Legislature, Regular Session, 1969, and the requisition of the Commissioner of the Department of Highways was regular in form and properly itemized for the payment of the claim for services rendered to the Governor in connection with his sale of the bonds provided for by those statutes and there were sufficient unexpended funds in the State Treasury to pay such claim, as there were, it was the mandatory duty of the Auditor to honor such requisition and mandamus lies to compel him to perform that act. *State ex rel. Board of Governors of West Virginia University v. Sims*, 140 W.Va. 64, 82 S.E.2d 321; *State ex rel. West Virginia Board of Education v. Sims*, 139 W.Va. 802, 81 S.E.2d 665; *State ex rel. Roth v. Sims*, 139 W.Va. 795, 81 S.E.2d 670; *State ex rel. West Virginia Commission on Interstate Cooperation v. Sims*, 135 W.Va. 257, 63 S.E.2d 524; *State ex rel. The West Virginia Board of Aeronautics v. Sims*, 129 W.Va. 694, 41 S.E.2d 506; *Glover v. Sims*, 121 W.Va. 407, 3 S.E.2d 612.

In *State ex rel. Board of Governors of West Virginia University v. Sims,* 140 W.Va. 64, 82 S.E.2d 321, in which Sims, Auditor, refused to honor a valid requisition submitted to him and to issue a warrant for the payment of current annual membership dues of West Virginia University to North Central Association on the grounds that neither the educational work nor the professional standing of the University would be promoted by continued membership in the association or impaired by the termination of such membership; that the association rendered no services to the University and membership in the association conferred no benefit to the University; and that payment of the proposed membership dues was not for a public purpose, this Court, in discussing the rights and duties of the Auditor in such situation, said that in the discharge of his duties the Auditor had the right, in a mandamus proceeding to compel him to honor a requisition, to question the constitutionality of the appropriation but that he did so at his peril, and in the opinion used this language: "The Auditor, however, does not have the right to substitute his opinion or judgment for that of the Board of Public Works in authorizing and approving the expenditure of public funds for the payment of membership dues of a public educational institution in an educational accrediting organization, or of the Budget Director in approving a requisition for such expenditure, or to question the wisdom, the propriety or the necessity of such action by the Board of Public Works or the Budget Director, or the policy of the Legislature in enacting Section 11, Article 3, Chapter 12, Code, 1931, as amended, * * *, and in appropriating funds for the payment of dues and membership in the organizations mentioned in that section of the statute."

In *State ex rel. West Virginia Board of Education v. Sims,* 139 W.Va. 802, 81 S.E.2d 665, the petitioner West Virginia Board of Education sought a writ to require the defendant, Edgar B. Sims, Auditor of the State of West Virginia, to honor a requisition submitted by the business manager of Shepherd College, a State educational institution, in the amount of $242.77 for the purpose of paying that sum to Sarah Helen Cree, professor of physical education at Shepherd College,

who engaged in a regular course of graduate study in physical education at Penn State, State College, Pennsylvania, for which she had been granted sabbatical leave by the West Virginia Board of Education. Sabbatical leaves and payment for them had been authorized by a statute of this State, Section 12, Article 2, Chapter 74, Acts of the Legislature, Regular Session, 1953. The Auditor refused to honor the requisition on these grounds: (1) Authorized payment of moneys from the personal services appropriation of the State educational institutions under the control of the West Virginia Board of Education was for a private purpose in violation of Section 6, Article X, of the Constitution of this State and (2) the statute grants credit of the State to a private person, in violation of the same section and article of the Constitution. This Court awarded the writ and held in point 2 of the syllabus that "Though it is competent for the Auditor of the State of West Virginia to question the authority of the West Virginia Board of Education to grant sabbatical leaves to members of the faculties of the State educational institutions under the control of the board, as provided by Section 12, Article 2, Chapter 74, Acts of the Legislature, Regular Session, 1953, it is not competent for the auditor to substitute his opinion or judgment for that of the state board of education in awarding sabbatical leaves in conformity with the statute, or to question the wisdom, propriety or even the necessity of the action on the part of the state board of education in awarding sabbatical leaves, or the policy which, in the first instance, the Legislature entertained in enacting Section 12 of the statute."

The language quoted in the opinions in the two above cited cases makes it clear that the Auditor is without authority to substitute his opinion or judgment for that of the Governor, or to supervise or question the wisdom, propriety, or necessity of the action of the Governor in determining and certifying that the charge for the services performed by the petitioner in connection with the sale of the bonds is a necessary expense if the action of the Governor is valid under the provisions of Chapters 125 and 126, Acts of the Legislature, Regular Session, 1969. Likewise such action of the Governor is not subject to the approval or supervision of the Director of Purchasing or

the Attorney General or the Commissioner of Finance and Administration of this State.

This Court has held in many cases that mandamus lies to require the discharge by a public officer of a nondiscretionary duty. *State ex rel. Clark v. Dadisman,* 154 W.Va. 340, 175 S.E. 2d 422; *State ex rel. Judy v. Kiger,* 153 W.Va. 764, 172 S.E.2d 579; *State ex rel. Greenbrier County Airport Authority v. Hanna,* 151 W.Va. 479, 153 S.E.2d 284; *State ex rel. Allstate Insurance Company v. Union Public Service District,* 151 W. Va. 207, 151 S.E.2d 102; *State ex rel. Island Creek Coal Company v. Hanley,* 149 W.Va. 107, 138 S.E.2d 848; *State ex rel. Yahn Electric Company, Incorporated v. Baer,* 148 W.Va. 527, 135 S.E.2d 687; *State ex rel. Wheeling Downs Racing Association v. Perry,* 148 W.Va. 68, 132 S.E.2d 922; *State ex rel. Williams v. The Board of Trustees of the Policemen's Pension or Relief Fund of the City of Charleston,* 147 W.Va. 795, 131 S.E.2d 612; *The W. E. Long Co.-Independent Bakers, Cooperative v. Burdett,* 147 W.Va. 177, 126 S.E.2d 181, and the numerous cases cited in the opinion in that case.

Chapters 125 and 126, Acts of the Legislature, Regular Session, 1969, are special acts which relate to and authorize the issue and sale by the Governor of bonds in the amount of $90,000,000.00. Chapter 125 deals with the single subject of the issue and sale of bonds in the amount of $20,000,000.00 and Chapter 126 deals with the single subject of the issue and sale of bonds in the amount of $70,000,000.00. Section 1 of Chapter 125 provides: "Bonds of the state of West Virginia of the par value not to exceed twenty million dollars during the fiscal year ending June thirty, one thousand nine hundred seventy, are hereby authorized to be issued and sold for the sole purpose of raising funds for the building and construction of free state roads and highways as provided for by the constitution and the laws enacted thereunder. Such bonds may be issued by the governor in such amounts, in coupon or registered form, in such denominations, at such time and bearing such date or dates as the governor may determine, based upon an examination of the state road commission's yearly program which justifies the issuance by the governor of said bonds, and shall

become due and payable serially in equal amounts beginning one year and ending twenty-five years from the date thereof." Section 13 of Chapter 125 provides: "All necessary expenses incurred in the execution of this act shall be paid out of the state road fund on warrants of the auditor of the state drawn on the state treasurer." The language of Section 1 of Chapter 126 is identical with that of Section 1 of Chapter 125, except that it relates to bonds in the amount of $70,000,000.00 instead of $20,000,000.00; and the language of Section 13 of Chapter 126 is identical with that of Section 13 of Chapter 125.

By the quoted provisions of these statutes the Governor is expressly authorized to issue and sell the bonds and is vested with discretion as to the manner in which he exercises his authority in connection with the issue and sale of the bonds. The statutes do not prescribe any specific directions, restrictions or limitations, or subject his actions to the supervision or approval of any other officer or governmental department, in the exercise of his discretion. The authority of the Governor in connection with the issue and sale of the bonds to obtain necessary or proper services to assist in and contribute to the consummation of the issue and sale of the bonds is necessarily implied by the provisions of the statute. It necessarily follows that the Governor had the power and authority to enter into the financial advisor's agreement of October 28, 1969, with the petitioner and that such agreement is valid and binding upon the State. Section 13 of each statute also by necessary implication empowers the Governor to determine that expenses incurred in connection with the sale of the bonds are necessary expenses, and the determination of the Governor that such expenses are necessary expenses is likewise not subject to supervision or approval by any other officer or governmental department. In issuing and selling bonds in the amount of $90,000,000.00, in entering into the financial advisor's agreement of October 28, 1969, and in determining and certifying that the charge of the petitioner for services rendered in relation to the sale of bonds by the Governor was a necessary expense, the Governor acted in the discharge of his official duties as provided by Chapters 125 and 126, Acts of the Legislature, Regular Session, 1969, and such acts of the Governor

are not subject to supervision or approval of the Auditor, or the Director of Purchasing, or the Attorney General, or the Commissioner of Finance and Administration of this State.

In *Hatfield v. Graham,* 73 W.Va. 759, 81 S.E. 533, L.R.A. 1915A, 175, Ann. Cas. 1917C, 1, this Court held in point 1 of the syllabus that "The office of governor is political and the discretion vested in the chief executive by the Constitution and laws of the State respecting his official duties is not subject to control or review by the courts. His proclamations, warrants and orders made in the discharge of his official duties are as much due process of law as the judgment of a court." In the opinion this Court said: "The governor of the State can not be held to answer in the courts in a civil action for damages resulting from the execution of his lawful orders or warrants issued in good faith in discharge of his official duties. The Constitution and laws of the State vest in him certain powers." In the early case of *Shields v. Bennett,* 8 W.Va. 74, at to determine what his duties are in any emergency; and, so long as he acts within the limits of his constitutional powers and privileges, his official conduct is not subject to review in any other manner than that provided by the Constitution which created his high office."

In the opinion in the leading case of *Slack v. Jacob,* 8 W.Va. 612, at page 664, is this language: "As to all authority specially confided to the governor, whether by the constitution or by statute, it will be presumed that reasons of a conclusive nature required it to be so confided as an authority properly and peculiarly, if not exclusively, pertaining to the executive department, and therefore not subject to coercion by judicial powers." In the early case of *Shields v. Bennett,* 8 W.Va. 74, at page 90, this Court said: "The Legislature may require the Governor to perform other duties than those specified in the Constitution, not incompatible with his dignity and constitutional functions." The duty to issue and sell the bonds and to exercise his discretion without specific directions, restrictions or limitations in so acting was imposed upon the Governor by the Legislature at its Regular Session, 1969, by the enactment of Chapters 125 and 126 of its Acts of that session.

In the recent case of *State ex rel. Karnes v. Dadisman*, 153 W.Va. 771, 172 S.E.2d 561, in discussing generally the validity of acts of the Governor, this Court said "That a governor may exercise his discretion and may act through his executive order is not disputed. Nor is it disputed that his acts, pursuant to his official duties, ordinarily are not subject to judicial review." The good faith of the Governor in issuing and selling the bonds is clear beyond all doubt and is not questioned. Neither is the validity or the regularity of the issue and the sale of the bonds challenged or questioned in any manner whatsoever. Moreover, the validity of the action of the Governor in the issue and the sale of the bonds and in determining and certifying that the expense in connection with the sale of the bonds was a necessary expense is supported by the application of the well established rule that in the absence of evidence to the contrary public officials will be presumed to have properly performed their duties and not to have acted illegally but regularly and in a lawful manner. *State ex rel. Karnes v. Dadisman*, 153 W.Va. 771, 172 S.E.2d 561; *State ex rel. Staley v. The County Court of Wayne County*, 137 W.Va. 431, 73 S.E.2d 827; *State ex rel. Bumgardner v. Mills*, 132 W.Va. 580, 53 S.E.2d 416.

Section 4, Article 3, Chapter 17, Code, 1931, as amended, relating to disbursements from the State Road Fund, provides that "Any claim of a contractor or others, not otherwise provided for, for labor done or for materials, services or supplies furnished to the State road commission, pursuant to the provisions of any article of this chapter, shall be audited by the commissioner, and, if found correct, the commissioner shall issue the commission's requisition upon the auditor of the State therefor, showing the nature of such claim and whether it is for labor done or materials, services or supplies furnished for construction of State roads, or for other purposes, and the auditor shall issue his warrant upon the State treasurer therefor, and the treasurer shall pay the same to the person, firm or corporation entitled thereto, out of the funds in the treasury provided for that purpose." Under the quoted provisions of the statute, the defendant, as auditor, is required to honor a valid requisition of the State Road Commissioner, now the

Commissioner of the Department of Highways, for the payment of any claim of the character mentioned in the statute.

Upon the undisputed facts previously indicated and upon the quoted provisions of the statutes and the cited cases, this Court is of the opinion that the charge of the petitioner for services rendered under the financial advisor's agreement was a necessary expense, is valid and binding upon the State, and accordingly holds that when the Governor has incurred a necessary expense within the meaning of the provisions of Chapter 125 and Chapter 126, Acts of the Legislature, Regular Session, 1969, and a requisition of the Commissioner of the Department of Highways, regular in form and properly itemized for the payment, as a necessary expense, of a claim for services rendered in connection with the sale by the Governor of the bonds authorized by those statutes, is duly submitted to the Auditor and there are sufficient unexpended funds in the State Treasury to pay such claim, it is the mandatory duty of the Auditor to honor such requisition and mandamus lies to compel him to perform that act.

There is no merit in the contention of the defendant that he is not required to issue his warrant in payment of the charge based on the financial advisor's agreement dated October 28, 1969, between the State by the Governor and the petitioner in connection with the issue and sale of bonds in the amount of $90,000,000.00 for the reason that the agreement was not approved by the Director of Purchasing or approved as to form by the Attorney General or signed by the Commissioner of Finance and Administration of this State, under Article 3, Chapter 5A, Code, 1931, as amended. That article relates and applies to the purchase of commodities and printing of the departments of the State government as appears from this language of Section 1: "The provisions of this article for the *purchase of commodities and printing* shall apply to all of the departments of the State government, except as is otherwise provided by this article or by law * * *." (Emphasis supplied.)

As previously indicated the authority of the Governor to issue and sell the bonds is free from any specified supervision,

restriction or limitation as to the manner in which he conducted the issue and sale of the bonds. If the Legislature had intended to subject the action of the Governor to the provisions of Section 3(8), Article 3, and Section 15, Article 3, Chapter 5A, Code, 1931, as amended, to require the approval of the financial advisor's agreement by the Director of Purchasing and the Attorney General as to form and to be signed by the Commissioner of Finance and Administration, the Legislature could and presumably would have imposed those requirements. That it did not do so renders applicable the familiar doctrine *expressio unius est exclusio alterius* which means that the express mention of one thing implies the exclusion of another. *Ratcliff v. State Compensation Commissioner*, 146 W.Va. 920, 123 S.E.2d 829; *Layne v. Hayes*, 141 W.Va. 289, 90 S.E.2d 270; *Harbert v. The County Court of Harrison County*, 129 W.Va. 54, 39 S.E.2d 177.

Though the scope of the provisions of Section 3(8), Article 3, and Section 15, Article 3, Chapter 5A, Code, 1931, as amended, has not been specifically defined or determined by any prior decision of this Court, those provisions were involved in *State ex rel. Hercules Tire and Rubber Supply Company v. Gore*, 152 W.Va. 76, 159 S.E.2d 801, cited and relied on by the defendant, and *State ex rel. Smith v. Gore*, 150 W.Va. 71, 143 S.E.2d 791. In the *Hercules* case the contract under consideration for the purchase of commodities consisting of tires was clearly within the provisions of Sections 3(8) and 15, Article 3, Chapter 5A, Code, 1931, as amended; and from the discussion in the opinion in that case of many provisions of Article 3 of that chapter it is clear that they relate to contracts for commodities and printing purchased by the Director of Purchasing and to properties and supplies of the State and not to an agreement, such as the financial advisor's agreement here under consideration, which relates not to the purchase of commodities and printing or properties and supplies of the State but to payment for services rendered in connection with the issue and sale of bonds under special Acts of the Legislature. In *State ex rel. Smith v. Gore*, 150 W.Va. 71, 143 S.E.2d 791, an original proceeding in mandamus in this Court, the Governor, Hulett C. Smith, sought a writ to

compel Gore, Commissioner of Finance and Administration, to affix his signature to certain contracts requiring the expenditure of State funds which had been entered into with certain publishers of newspapers throughout the State to pay the cost of publishing notice of an election for the purpose of taking the sense of the voters on the question of calling a Constitutional Convention, this Court held that the Act which provided for the calling of such convention was unconstitutional because of unequal apportionment of the number of delegates and did not consider or resolve the question whether such contract was within the scope of any of the provisions of Sections 3(8) and 15, Article 3, Chapter 5A, Code, 1931, as amended, and should be approved by the Director of Purchasing and the Attorney General and signed by the Commissioner of Finance and Administration.

The writ as prayed for is awarded.

*Writ awarded.*